Anderson *vs.* Blythe.

DANIEL S. ANDERSON, plaintiff in error, *vs.* S. E. BLYTHE, defendant in error.

An execution which, upon being issued by the clerk, passed in due course from him to the sheriff, will be presumed to have remained in the sheriff's hands during his continuance in office, unless shown to have been returned, or delivered to the plaintiff or to some other person within that period.

Executions.   Evidence.   Presumptions.   Before Judge KNIGHT.   Cobb Superior Court.   November Term, 1874.

For the facts of this case, see the opinion.

C. D. PHILLIPS; GEORGE N. LESTER, for plaintiff in error.

W. T. & W. J. WINN, for defendant.

BLECKLEY, Judge.

Money in court was raised by sale of property under the older of two judgments. Plaintiff in the younger, in order to take the money, attacked the older as paid off. This was the issue tried by the jury. *Fi. fa.* on the older judgment was issued in 1861. The execution docket, for some reason, was not introduced, but the person who was then clerk testified, without objection, that the records and dockets showed that the *fi. fa.* was issued and handed to the sheriff. Nothing more appears in reference to the custody of the *fi. fa.* until some time in 1863, when the plaintiff paid cost upon it to the sheriff. Whether he received the *fi. fa.* from the sheriff at that time, or whether he already had it in hand, he could not state, and there was no other evidence as to the date of its reception by him. The same persons were sheriff and deputy sheriff from a time prior to the issuing of the *fi. fa.* until after it came to the plaintiff's hands. There is evidence tending to show that in 1862 the clerk was called upon to make a calculation upon all judgments against the defendant which were then liens upon his property ; that he did so, and in his presence the defendant paid to the sheriff and deputy sheriff,

Anderson *vs.* Blythe.

in Confederate money, the common currency of the country, the amount due on all the judgments embraced in the calculation except the younger of the two now before the court. This was dropped from the calculation and not paid. The executions were not present at the time of payment, or if so, were not seen by the clerk. He based his calculation on other evidence—doubtless on the records and dockets of his own office. One of the questions for the jury was—whether the execution now attacked as paid off, was in the hands of the sheriff or his deputy at the time of this alleged payment. If it was not, although the amount of it might have been included in the clerk's calculation and in the sum paid, the debt would not be extinguished, for without the custody of the *fi. fa.* the officer would have no warrant to collect. The facts relied on to show custody were that the *fi. fa.* was issued in 1861 and handed to the sheriff; that the same sheriff and deputy continued in office during the whole of the year 1862, in which year the payment was made, and that it was not shown to be in other hands until the following year. The court was requested to charge the jury that in the absence of proof to the contrary, the presumption of law was, that a *fi. fa.* issued by the clerk and handed to the sheriff, was in the sheriff's hands until paid, or until shown to have been taken up by the plaintiff or some one else for him. This request was denied. We think that, under all the facts in the record, the court should have given, substantially, the instructions asked for. The doctrine that a state of things once existing is presumed to continue until a change or some adequate cause of change appears, or until a presumption of change arises out of the nature of the subject, is an element of universal law. Without such a principle we could count upon the stability of nothing, and to assure ourselves of a set of conditions at one period of time would afford no ground for inferring the same conditions at any other period. This presumption of *continuance* is a well recognized principle of evidence: 1 Greenleaf, section 41 ; and we think its application was rightfully invoked by counsel in the present case. If

this *fi. fa.* passed regularly from the clerk's office to the sheriff in 1861, and there is no evidence of its return or any other disposition of it until 1863, what is there to point to any custody but that of the sheriff during the year 1862? Had it been wanted in the latter year for use as evidence, search for it in the sheriff's office would undoubtedly have been requisite as preliminary to admitting secondary evidence of its contents. True, on its face, it was returnable to the next term of the court after it issued; but it has not been the practice in Georgia to pay any attention to the return-day of an execution. It is not usage for the sheriff to make a return until he has taken some action by collecting the money, making a levy, or searching for property; and in point of fact there is no entry by the sheriff on the *fi. fa.* prior to 1863. Thus, the paper was not made ready to be returned into the clerk's office, and no actual return of it to that place was shown.

Judgment reversed.