### 7418. WILKINS v. GEORGIA CASUALTY COMPANY.

1. Where, under the terms of an accident policy, a suit is brought for the entire and irrecoverable loss of the sight of an eye, it is incumbent upon the plaintiff to show that the loss is both entire and irrecoverable.
2. Where in such a suit it is shown that the loss is entire, there is no presumption of law that such condition will remain until the contrary is proved.
3. Under the facts in this case, the jury should have been allowed to say whether or not a prima facie case of irrecoverable injury had been made by the plaintiff.

DECIDED JANUARY 23, 1917.

Action on insurance policy; from city court of Floyd county—Judge Nunnally. March 13, 1916.

*Eubanks & Mebane,* for plaintiff. *Barry Wright,* for defendant.

JENKINS, J. On March 13, 1915, J. W. Wilkins brought an action against the Georgia Casualty Company for $1,000 in the city court of Floyd county, the same being a suit under the terms of a policy of accident insurance, for loss of the sight of an eye. The clause in the policy under which suit was brought, so far as pertinent to an understanding of the case before us, is as follows: "If such injuries . . shall result, independently and exclusively of all other causes in one of the losses enumerated below . . within ninety days from the date of the accident . . the Company will pay the sum set opposite such loss . . for loss of . . sight of one eye, ½ principal sum. . . Loss shall mean . . with regard to eyes, entire and irrecoverable loss of sight." The trial judge granted a nonsuit, on the ground that it was not shown that the loss of the sight of the eye was "irrecoverable," as required by the terms quoted from the policy. The only question this court is now called upon to decide is whether or not the trial judge erred in sustaining the motion to nonsuit, for the reason indicated.

The evidence of the plaintiff nowhere affirmatively undertakes to show that the loss of sight is irrecoverable. He testified that it was total, and testified as to the nature and extent of the injury, but he did not undertake to say directly whether or not the injury was permanent and irrecoverable. However, it is thought proper to state the substance of his testimony, for the purpose of throwing such light as it may upon the issue here to be determined. The plaintiff testified, that he was employed by an express company, for which he drove a wagon; that on October 3, 1914, in order to tighten a tap on the wheel of the wagon, he was striking it with a wrench, which caused particles of steel to fly off, hitting and penetrating his right eye; that in consequence of this injury he was unable to work for the remainder of the day, and on October 5 consulted a physician, who on that day removed the steel from the injured eye and continued to treat the eye from time to time until January 20 of the following year; that since the date of the injury he had not seen out of the injured eye so as to tell what anything was; that there had never been a time, since the eye was hurt, when by its use he could have found his way home; that he had not been able to distinguish anything by the use of the injured eye from the time of the injury; that he could tell daylight from dark, but could distinguish nothing; that he kept thinking and hoping it would get better, but it continued to grow worse in spite of the treatment given; that he could not see quite as well in January as he could in the preceding January; that the steel went directly into the center of the pupil, and his physician worked faithfully to save it, but failed to do so.

Dr. L. W. Garard testified for the plaintiff as follows: "I am a practicing physician and do a little surgery. I have been practicing about nine years. I am a graduate from the University of Georgia. In my opinion, assuming that on the 3d day of October, 1914, a piece of steel flew from a wrench or hammer and struck the plaintiff in the center of the cornea of the right eye, and imbedded itself to such an extent that it had to be located by an X ray to be removed, that immediately he lost, from the striking, as soon as it was struck, the vision of that eye, that it has remained lost from then until the present time, in my opinion it would be a permanent injury. I examined Mr. Wilkins's eye in there a moment ago. There seems to be opacity in the eye there; and some-

times by the removal of the lens you might restore it; it is rather doubtful in this case, from what I can see there. An operation might benefit it; no certainty of that. Opacity is a milky substance back in the posterior portion of the eye, caused from inflammation brought about by injury. A person's eye when it goes blind either from a natural or unnatural cause—most generally that eye does change in color, opacity sets up and gradually grows, and, as it goes on, the eye gradually changes from what you would call dead to deader, and after a long time it gets white. After a man's eye is injured and vision is destroyed, it still is sensitive to light and heat, bright light somewhat. The more the opacity the more the light is shut out. Practically all blind people, for several years after they have lost their vision, can tell the difference between daylight and dark, and things of that kind to some extent. I do not treat the eyes very much. Naturally, very often cases come through, in the practice of medicine, where a man is called upon to look at a person's eyes, and he usually refers them to a specialist. I have never operated on the eyes more than to remove foreign bodies in the cornea, on the outside of the ball or stuck in. An operation such as I described for Mr. Wilkins's eye is entirely possible. This condition of Mr. Wilkins's eye is somewhat similar to a cataract on the lens. In fact, from what I can see, it looks like the lens is affected. Sometimes you get good results from a surgical operation and sometimes you don't. That is true about any operation, more or less. In an operation for appendicitis sometimes the undertaker gets the good end of it. Any operation is liable to be a success or a failure, as the case may be, but it is doubtful as to his eye. From what I can see of the condition of his eye I think an operation would be all right. If I were called upon to advise Mr. Wilkins to have an operation, or not, I would advise him to try an operation, without making a further examination of the case. The thing about an operation is to let that cataract get good and ripe. An operation now would probably stand a better chance than an operation shortly after the injury, because the cataract has gotten riper. I would not swear that the loss of this eye is irrecoverable, that is, by an operation, or otherwise. A cataract grows on the lens, it is a disease of the lens. This opacity is on the lens, what I can see of it. I mean, by saying that I would advise an operation, that I would advise that as

an experiment, to see if it can not be restored. I would not advise him, in my judgment, that an operation would restore it. I would not give it as my opinion that an operation would restore his sight, but I think it worth trying. I could not positively say that after a man had been blind for eighteen months that an operation would be successful, in my opinion. I was asked a while ago as to my expertness in these matters. I have witnessed such operations, and I have studied the eye in my regular practice."

1-2. We can not agree with the contention of counsel for the plaintiff in error in their application of the doctrine of the "presumption of continuity" as applied to this case. It is argued by counsel that when a state of things is once proved to exist, there is a presumption that it will continue until a change or some adequate cause of change is made to appear. The true doctrine of the rule invoked is that when a condition is shown to exist prior to the trial, there is a legal presumption of its continuity at the time of trial; and the application of this rule should not be applied to a presumption of future continuity. Where the question is whether an injury is recoverable or irrecoverable, there can be no application of the doctrine invoked, as the issue itself relates entirely to the future. The doctrine of presumption of continuity does not raise a presumption that something shown to exist *will* continue, but raises the presumption that something shown to exist *has* continued. We do not think that our construction of this doctrine is contravened by the rulings in *Anderson* v. *Blythe,* 54 *Ga.* 507, and *Coleman & Burden Co.* v. *Rice,* 105 *Ga.* 163 (31 S. E. 424), or the ruling in *Sasser* v. *Byrd,* 8 *Ga. App.* 824 (70 S. E. 157), cited by counsel for the plaintiff in error. By the terms of the policy under which the suit was brought, it was incumbent upon the plaintiff to allege and prove that the injury to his eye, which is the basis of his suit, was not only entire, but also irrecoverable. If, therefore, by the evidence for the plaintiff, the injury to the eye has been established to be "entire," in accordance with the terms of the policy, there is no presumption of law, arising from such proof, that such condition will continue, so as to shift the burden of proof upon the defendant. Even where the doctrine of presumption of continuity can be properly applied, it is a well-settled principle that presumptions, except conclusive presumptions, must give way to proof; and the plaintiff is therefore compelled to stand upon the evidence introduced in support of his contentions.

3. We think the jury should have been allowed to pass upon the question as to whether or not the injury was irrecoverable. While the testimony of the expert witness, which in the statement of facts has been set forth in full, does not positively assert that an operation would not benefit the injured eye, still he gives it as his positive and unequivocal opinion that such an injury as is shown by the facts of this case is a permanent one. He testifies that he would advise an operation as an experiment, but would not state that in his judgment such an operation would restore the sight. According to the evidence it was his opinion that such an operation was "worth trying," and the jury might have been authorized to assume that it was for that reason that he was unwilling to testify positively that the loss of the sight is absolutely irrecoverable. Furthermore, the jury need not have been governed entirely on this point by the testimony of the expert witness, but would have had the right to consider the testimony of the plaintiff himself, who, it will be recalled, had testified that he had never been able to see with the injured eye from the date of the accident. In view of this testimony of plaintiff, taken together with the other evidence in the case, it was for the jury to say whether or not the sight of the injured eye was irrecoverably lost .

It is, therefore, the judgment of this court that the ruling of the trial judge granting a nonsuit was erroneous.

*Judgment reversed.*

*Broyles, P. J., and George, J. (presiding in place of Bloodworth, J., disqualified), concur.*