32698. TOWN OF FORT OGLETHORPE *et al.* v. CATOOSA COUNTY *et al.*

DECIDED OCTOBER 18, 1949.

*A. S. Barger, Mitchell & Mitchell,* for plaintiffs in error.

*Warren Akin, Solicitor-General, Gleason & Painter,* contra.

TOWNSEND, J. ■ ■ Counsel for Catoosa County filed a motion to dismiss the bill of exceptions on several grounds, one of which in substance is that the trial judge in certifying the bill of exceptions directed that "the same be transmitted to the current term, 1949, of the Court of Appeals of the State of

Georgia." This certificate and order embodied therein was dated July 13, 1949, during the April term of the Court of Appeals which ended July 31, 1949, but the bill of exceptions did not reach the office of the Clerk of the Court of Appeals until August 1, 1949, at which time cases were being docketed to the September term of said court.

This ground of the motion to dismiss the bill of exceptions avers that the trial judge directed that it be transmitted to the current term of the Court of Appeals; that it was filed in the office of the clerk of the trial court on July 20, 1949; that it was filed in the office of the Clerk of the Court of Appeals on August 1, 1949; and that "said bill of exceptions should have been transmitted to the next term of the Court of Appeals of Georgia which is the September term, 1949, the dockets of which term will not close until October 12, 1949."

In support of their contention counsel for movant cite *Atlantic Coast Line R. Co.* v. *Ga. Sweet Potato Growers Assn.*, 171 *Ga.* 30 (154 S. E. 698), and *Bethlehem Steel Co.* v. *Spivey*, 62 *Ga. App.* 693 (9 S. E. 2d, 702). It will be noted that in both of these cases the writ of error was dismissed because of the failure of the clerk of the trial court to transmit the record within the time required by law, which resulted in the record reaching the appellate court at a term subsequent to the term specified by the judge of the trial court in his certificate to the bill of exceptions. In the *Atlantic Coast Line* case the clerk of the trial court certified that "the delay in transmission was due to illness and shortage of clerical help," and in the *Bethlehem Steel Co.* case the headnote shows "the sole cause of the delay being pressure of work in the office of the clerk of the trial court." These decisions, which were rendered in 1930 and 1940, respectively, were in accordance with the law as it then existed, when an attorney was held responsible for his case even to the extent of seeing that the clerk of the trial court performed his duty in reference to the transmission of records. However, the law in this respect was changed by the Constitution of 1945, which provides that "No writ of error shall be dismissed because of delay in transmission of the bill of exceptions and the copy of the record, or either of them, resulting from the default of the clerk or other cause, unless it shall appear that

the plaintiff in error or his counsel caused such delay." Code (Ann.) § 2-3705; Ga. L. 1945, p. 44. And the new Constitution further provides that, "All writs of error in the Supreme Court or the Court of Appeals, when received by its clerk during a term of the court and before the docket of the term is by order of the court closed, shall be entered thereon, and when received at any other time, shall be entered on the docket of the next term; and they shall stand for hearing at the term for which they are so entered." Code (Ann.) § 2-3708. This provision is not only authority for docketing and deciding the case, but the terms "shall be entered on the docket at the next term" and "shall stand for hearing" appear to be mandatory. The Rules of Practice and Procedure necessarily follow this provision of the Constitution. See Ga. L. 1946, p. 741, Code (Ann. Supp.) § 6-1301.

The clerk of the trial court is now, and was prior to the constitutional amendment above quoted, allowed by statute ten days in which to transmit the bill of exceptions and transcript of record to the appellate court, and this statutory provision could not be abrogated or abridged by an order of the trial judge to do the impossible. For example, if the trial judge, not being familiar with the terms of the appellate court, should order a long record transmitted to a term of the appellate court for which the docket closed at twelve o'clock of that day, the clerk would not be required to comply with the order, but would have the ten days allowed him by statute in which to transmit the record. In the case sub judice the bill of exceptions was filed in the office of the clerk of the trial court on July 20, during the April term of the Court of Appeals. It did not reach the office of the Clerk of the Court of Appeals until August 1, two days after the time allowed by law for transmission. However, if the clerk had transmitted the bill of exceptions and transcript of the record within the time provided by statute it would still have been docketed to the September term of the Court of Appeals because the docket of the Court of Appeals for the April term had closed on June 13, more than a month before the bill of exceptions was filed in the office of the clerk of the trial court.

The certificate of the judge of the trial court, and the order

embodied therein that the bill of exceptions be transmitted to the current term of the Court of Appeals, being signed on July 13, when the Court of Appeals was docketing cases to the September term, the words "current term," under a proper construction, referred to the September term of the Court of Appeals. "Current term" of the Court of Appeals means the term to which cases are being docketed when the case reaches the Court of Appeals; and under the present law, as cited above, direction that a bill of exceptions be transmitted to the current term is sufficient.

What is said above has reference only to the matter of dismissing the bill of exceptions. It is not intended in any way to relieve the clerk of the trial court from complying with the statute relative to transmitting the record within ten days, nor to relieve him and his bondsman from suit should a litigant suffer damage because of the clerk's failure to comply with the statute in this respect.

The remaining grounds of the motion to dismiss the bill of exceptions are without merit and said motion is denied.

Counsel for the intervenors insist only on their grounds of intervention that the transaction by which Catoosa County obtained the "New Area" water system was in violation of article VII, sec. VII, par. 1 of the State Constitution (Code (Ann.) § 2-6001), and art. VII, sec. VIII, par. 1 (Code (Ann.) § 2-6101). With respect to these grounds, the intervention alleges in substance that Catoosa County took from the funds saved from the operation of its water system the sum of $10,000 and made a down payment to the War Assets Administration of the U. S. Government for a water system in the "New Area," which is now inside the corporate limits of the intervenor, the Town of Fort Oglethorpe, Georgia, and which was originally a part of Fort Oglethorpe and where the existing water system was maintained by the Federal Government, prior to its having been so purchased by Catoosa County. It is contended that the taking of this $10,000 and so applying it was a misappropriation of the funds in question and was a violation of a contract between the holders of a pre-existing series of revenue certificates issued by Catoosa County against its water district as it existed prior to the admission of the particular New Area forming the subject-

matter of this litigation, and Catoosa County, because under such contract the holders of these certificates had a prior lien on this $10,000 and the right to have the same applied to the liquidation of their certificates; that the use of the money in the manner of which complaint is here made amounted to a loan by the holders of these certificates to the county of this fund and thereby created a debt against the county which, with other obligations against the county, amounted to a violation of the constitutional provision contained in Code (Ann.) § 2-6001. It is also contended that the taking of the said $10,000 from the funds accumulated from the operation of the previously existing water district amounted to taking funds of a county from a sinking fund in violation of the provisions of the Constitution contained in Code (Ann.) § 2-6101. These allegations of the intervention were specially· demurred to on the grounds that they constituted a mere conclusion of the pleader; that the provisions of the previous resolution setting forth the certificate fund are not made a part of the intervention, without which it is impossible to determine from the allegations of the intervention the precise conditions of the resolution setting up the fund; and that the intervention fails to allege that the holders of the previous issues, for whose benefit the fund was created, did not consent to this use of said fund. This ground of demurrer along with all other special grounds was sustained by the trial court with the right of the intervenors to amend.

This order was entered on June 25, 1949, and was not excepted to pendente lite. On the other hand, the intervenors acceded to this ruling of the court by amending their petition in an effort to meet the criticism of the demurrer, and thereby waived their right to except to the judgment of the court of June 25, 1949. See *Stainback* v. *Dunn,* 53 *Ga. App.* 464 (3) (186 S. E. 220) ; *Poss* v. *Hardin,* 181 *Ga.* 519 (1) (182 S. E. 898). It therefore became the law of this case that the original allegations of the intervention regarding this subject constituted conclusions of the pleader, that it was essential to have the resolutions providing for the previously existing water revenue certificates attached to the intervention, and that in the absence of an allegation that the county did not have the consent of the holders of those certificates to use the fund in the manner complained of it would be

194

assumed that they had such assent. The amendment sets up the resolution, but fails to allege lack of consent of the holders of the previously existing revenue certificates to use the funds in the manner of which complaint is made. The amendment also states that the use of the $10,000, thus constituting a debt in favor of the holders of these certificates, exceeded 1/5 of 1% of the assessed valuation of the taxable property in the county and was therefore in violation of the constitutional provision contained in Code (Ann.) § 2-6001. The original special demurrers were renewed to this petition as amended and sustained by the court in an order entered July 2, 1949, to which exception is here made.

So far as the intervention as amended seeks to show a violation of the provisions of the Constitution contained in Code (Ann.) § 2-6001 prohibiting counties and other political subdivisions of this State from incurring an indebtedness in excess of 7% of the assessed value of all the taxable property located therein without a vote of the people, it remains a conclusion of the pleader because no other debt is shown, nor is it shown what the assessed valuation of the county is, without which it cannot be determined from the pleadings whether or not the $10,000 would so exceed the constitutional prohibition. It follows, therefore, that, measuring the allegations of the intervention as amended by the special demurrer as renewed, all the criticism of the demurrer was not met by the amendment, and the petition remains subject to the demurrer. The trial court did not err in sustaining the same.

■ The contention that this water revenue certificate fund is the same as a sinking fund created by the levy of taxes to retire bonded indebtedness against the county, as provided for by the Constitution (Code (Ann.) § 2-6101) is unfounded. Code (Ann. Supp.) § 87-802 provides that "the term 'municipality' shall mean any county, city or town of the State," and § 87-807 provides that the municipality issuing revenue anticipation certificates shall not be subject to any pecuniary liability thereon and that holders of such certificates shall never have the right to compel any exercise of the taxing power of the municipality to pay such certificates or the interest thereon, nor to enforce payment thereon against the property of the municipality. This statute further provides that such certificates shall not constitute a

charge, lien or incumbrance, legal or equitable, upon any property of the municipality.

Assuming, but not deciding, that the county converted the $10,-000 from the purposes for which it was legally intended to be used, such diversion does not constitute a violation of the provision of the Constitution as contended by the intervenors. The judgment of the trial court sustaining the demurrers to the intervention as amended is not error for any reason assigned.

■ Counsel for the intervenors contend that the final judgment validating the certificates was entered by the trial court without first hearing evidence, and that this was error for the reason that the answer of the county to the petition of the solicitor-general demanded strict proof of the material allegations contained in the original petition. Failure to hear evidence in such a proceeding, under some circumstances at least, constitutes reversible error. See *Dade County* v. *State of Georgia,* 75 *Ga. App.* 330 (2) (43 S. E. 2d, 434); *Jennings* v. *New Bronwood School District,* 156 *Ga.* 15 (5) (118 S. E. 560); *Harrell* v. *Whigham,* 141 *Ga.* 322 (2) (80 S. E. 1010).

However, the exception here, as shown by the bill of exceptions to the judgment of the trial court validating the revenue certificates, is that the same is "contrary to law and the evidence in said case" and "the court should have refused validation of said revenue certificates and heard and taken evidence on the several issues raised by said intervention and objections." The court should not have heard evidence on the intervention because by demurrer the intervention had been stricken at the time he entered the final order and judgment. These exceptions are too general to include exceptions that there was no evidence introduced in support of the original petition. Indeed, the exception to the judgment itself indicates that evidence was introduced by contending that the judgment is contrary to it. There is nothing in the bill of exceptions to indicate that no evidence was introduced. On the other hand, the record is such that, in the absence of a contrary showing, it is presumed to have been introduced, and presumed to have been sufficient to support the judgment. *Braswell* v. *Brown,* 112 *Ga.* 740 (38 S. E. 51); *Chatham Ice Cream Co.* v. *Sakakeeny,* 29 *Ga. App.* 768 (116 S. E. 558). This assignment of error is also without merit.

The trial court did not err in sustaining the renewed demurrers to the intervention as amended.

*Judgment affirmed. MacIntyre, P. J. and Gardner, J., concur.*