42734. AMERICAN OIL COMPANY v. McCLUSKEY et al.

ARGUED APRIL 5, 1967—DECIDED OCTOBER 25, 1967—REHEARING
DENIED NOVEMBER 21, 1967—

*Edwards, Bentley, Awtry & Parker, Scott S. Edwards, Jr., A. Sidney Parker,* for appellant.

*Mundy & Gammage, William W. Mundy, E. Lamar Gammage, Fullbright & Duffey,* for appellees.

DEEN, Judge. ■ A motion to dismiss the appeal was made on grounds that: the notice of appeal filed November 17, 1966, failed to state whether the transcript of evidence was to be transmitted as part of the record; the copy of the record was not transmitted within 30 days; no court order was taken granting an extension of time; the costs were not paid until after a motion to dismiss was filed on January 31, 1967; the attempted effort to amend the notice of appeal by specifying the transcript for inclusion in the record filed February 3 is void, as well as a second amendment filed February 8, and the notice did not contain enough to amend by.

As to these objections: A. Failure to specify whether or not the transcript of evidence is to be included in the record on appeal is not one of the grounds for dismissal of the appeal listed in *Code Ann.* § 6-809. "No appeal shall be dismissed or its validity affected for any other cause." In any event, nothing in the law prohibits the addition of such specification of record by amendment. Amendments to pleadings are generally allowed in the trial court. The notice of appeal when amended complied with the provisions of *Code Ann.* § 6-802.

B. The notice of appeal was filed November 17, 1966. The certificate of the clerk of court states that: "The transcript of evidence was filed August 25, 1966, and the delay in transmitting this transcript is due to the stress of business in this office." Obviously, there was no delay in filing the transcript so as to bring the ruling under *Davis v. Davis,* 222 Ga. 579 (151 SE2d 123) or *Joiner v. State,* 223 Ga. 367 (155 SE2d 8). As stated in *Elliott v. Leathers,* 223 Ga. 497 (156 SE2d 440), the Constitution forbids dismissal of any case where the delay is attributable to the clerk of court rather than to counsel. Even where there is a delay in the filing of the transcript, if it does not delay the docketing and hearing of the case in the appellate court it is

not cause for dismissal. *Hornsby v. Rodriguez,* 116 Ga. App. 234 (156 SE2d 830).

C. Where the record in the lower court is forwarded prior to payment of costs in that court, and the failure to pay costs has not worked a delay here, there is no ground for dismissal. *City of Atlanta v. Akins,* 116 Ga. App. 230 (156 SE2d 665).

None of the grounds of the motion to dismiss is meritorious.

■ Where the court has no jurisdiction over the subject matter of the suit, jurisdiction cannot be waived or conferred by the parties to the litigation. *Ga. R. & Bkg. Co. v. Redwine,* 208 Ga. 261 (1) (66 SE2d 234). An action such as this one by a parent for the homicide of a minor child under *Code Ann.* § 105-1307 is statutory in origin, and may be maintained only within the purview of the legislative grant. *Burns v. Brickle,* 106 Ga. App. 150 (126 SE2d 633). By virtue of another statute (*Code* § 114-103), if the plaintiff's decedent was an employee of the defendant within the purview of the Workmen's Compensation Act, all other rights and remedies of the plaintiff are excluded. The plaintiff in her brief concedes that the plea in bar filed by the defendant attacks the jurisdiction of the superior court over the subject matter of the action. Where the attack is successful, the only proper judgment of the court is one of dismissal. *Bartram v. City of Atlanta,* 71 Ga. App. 313 (1) (30 SE2d 780), and where the trial would, for lack of jurisdiction, end in a worthless judgment, the objection may be made at any stage. *Brown v. Redwyne,* 16 Ga. 67, 79. The plea in bar raising this question was not filed too late. "Consent of parties, however, can not give a court jurisdiction of a subject matter when it has none by law; and when this court discovers from the record that a judgment has been rendered by a court having no jurisdiction of the subject matter and the case is brought here for review upon writ of error, this court will of its own motion reverse the judgment." *Smith v. Ferrario,* 105 Ga. 51, 53 (31 SE 38).

■ There is no merit in the insistence that the defendant did not authorize its servant to employ the deceased. This servant, Mr. Disharoon, testified that he was given general authority to hire such labor as was necessary to assist him in cleaning and

removing the defendant's property from the service station, and that he was not instructed to employ only those who had social security cards. Moreover, there was no evidence that the information of any such limitation upon Disharoon's authority was given either to the plaintiffs, the parents of the deceased, or to the boy himself. The defendants gave Disharoon the indicia of authority to employ the deceased to do the work he was engaged in when killed. He was apparently a general agent for the purpose. In *Thomas v. Case*, 84 Ga. App. 564, 568 (66 SE2d 434), that term is defined: "A general agent is one who has authority to act for his principal in all matters connected with the particular matter or business, or he may be one who is given entire and general control and management of the matter or business of a particular nature." No private limitation upon the agent's apparent authority is binding upon third persons. *Mason v. Rice*, 47 Ga. App. 502 (1) (170 SE 829); *Smith v. Holbrook, Glazier & Co.*, 99 Ga. 256 (1) (25 SE 627).

The defendant's contention that the deceased was not an employee or invitee on the premises where he was killed because he had, at the time, completed the duties he was employed to perform is contrary to the evidence and the principle of law applicable to the relationship of master and servant. It has been uniformly held that a servant's relationship with his master does not end the moment he finishes the task allotted to him or the period of his employment expires, but that the servant must be given reasonable time to depart his master's premises before the relationship of master and servant ceases. *U. S. Cas. Co. v. Russell*, 98 Ga. App. 181 (105 SE2d 378). A servant also continues to occupy the status after he finishes his work and while he is waiting to be paid. 99 CJS 857, Workmen's Compensation, § 241.

■ It is a basic rule that appellate courts in construing testimony should not lean to strained or illogical constructions but should place on it the meaning manifestly intended and adopted on the trial of the case where this is possible. Here the defendant's employee Disharoon was called by the plaintiff for cross examination concerned entirely with the events of July 14, 1964, when plaintiff's decedent was killed. Immediately

thereafter defendant's counsel examined him as to his obtaining a gun about a year prior to that date; his showing it to a superior about six months prior; who else had seen the gun; whether he was drinking on the morning of the mishap; when during that morning plaintiff's decedent was employed and how long he worked; whether he had a social security card; how much of the job had been completed when the accident occurred; and whether he ever drank on the job. Here Disharoon replied that one time he and other employees worked all night *putting up banners for a party at the Biltmore Hotel several years ago.* He stated: "There were several of us there" (putting up the banners.) "Q. Do you know approximately how many employees the American Oil Company has? Just make a rough guess. A. If I was going to guess, I would guess about 75,000. Q. Within the State of Georgia? A. There's over 300 in the regional office. Q. In Atlanta? A. Yes, sir."

Referring to this testimony after the evidence had closed, counsel for the defendant stated while urging its plea in bar based on the contention that the Board of Workmen's Compensation had exclusive jurisdiction: "The testimony by Mr. Disharoon shows that American Oil Company employed more than 10 employees and would be within the Act on it. His sole remedy at law would be a workmen's compensation claim." In reply counsel for the plaintiff, without taking issue with this interpretation of Disharoon's testimony, argued: "We take the position that it is not compensable because there is no standard to measure what like laborers would earn . . . his labor was so casual that he could not by any stretch of the imagination be held to be under the Workmen's Compensation Law." The judge's question indicated that he, too, was assuming the defendant to be under the Act, and was interested in the legal status of the deceased as an employee.

Disharoon was a maintenance man for service stations located in a section of Georgia running from Gainesville to the Alabama and Tennessee lines. He had worked for 17 years. He had a supervisor, Stewart, who had been employed for 11 years, traveling to American Oil Company installations from place to place, and over him there was an area engineer, Brock, who had worked

for 20 years. Mention was specifically made of an American Oil Company Bulk Plant at Rome, for which another man, Baker, was distributor, and a station at Dalton, where Disharoon had the pistol shortly before this incident. As to the scope of operations, American Oil Co. is a Maryland Corporation. Regarding its slogan on decals, which Disharoon was in the course of removing at a Rome, Ga., filling station, the following occurred: "Q. Is this slogan for the purpose of encouraging public confidence in your company to buy your products? A. Yes. Q. And millions of dollars are spent by your company in advertising this on television, radio, and in the newspapers to encourage the confidence of the people? A. Yes."

This testimony, although circumstantial in part, is sufficient to establish that the defendant American Oil Company had more than 10 employees in Georgia on the date of the accident, and to demand a finding that the State Board of Workmen's Compensation had exclusive jurisdiction in any action resulting from his death.

*Judgment reversed. Bell, P. J., Hall and Eberhardt, JJ., concur. Felton, C. J., and Jordan, P. J., concur specially in Division 4. Pannell, J., concurs specially in Division 1. Quillian and Whitman, JJ., dissent.*

FELTON, Chief Judge, and JORDAN, Presiding Judge, concurring specially. We concur in the judgment insofar as it embodies the question whether American Oil Company had ten employees at the time of the injuries involved on the ground that we are of the opinion that this court can take judicial notice of the fact that American Oil Company had ten employees and more at the time of the death of petitioner's son. In all other respects we concur in the majority opinion and judgment.

PANNELL, Judge, concurring specially. I concur in the judgment and concur in the conclusion reached in Division 1 of the opinion, that the motion to dismiss the appeal is without merit, but solely on the grounds (1) that the failure to specify in the notice of appeal whether the transcript was to be transmitted is not jurisdictional, and (2) the transcript of the proceedings was filed in the lower court within the time required by law and the failure of the clerk to transmit the record and *transcript* to this

court within the time required was not occasioned by the fault of the appellant to so specify the transcript in the notice of appeal or otherwise, the clerk's certificate showing the delay was occasioned solely by the press of business in his office.

I do not concur in the following rulings in Division 1 of the opinion: (a) That Section 13 (b) of the Appellate Practice Act of 1965 (Ga. L. 1965, pp. 18, 29) as amended by Section 10 of the Act of 1966 (Ga. L. 1966, pp. 493, 500; *Code Ann.* § 6-809) providing that no appeal shall be dismissed except for the reasons therein given is controlling on this court. It is my opinion that the legislature has no right to determine the grounds for dismissal of an appeal from this court where the cause for dismissal pertains to jurisdictional matters which the legislature itself has provided. That this concept is correct is exemplified by the rulings of both this court and the Supreme Court dismissing appeals because of the late filing of the transcript resulting in a late transmission of an appeal to this court, and dismissing appeals because of a late filing of enumerations of error, neither of which are grounds for dismissal provided by statute.

 That a notice of appeal can be amended because there is no statute prohibiting such amendment. A notice of appeal is not a *pleading* within the meaning of our statutes allowing freedom of amendment as to pleadings, and the mere fact that no statute prohibits an amendment to a notice of appeal does not ipso facto permit such an amendment. If this be a valid rule there would be no necessity for numerous Code provisions, such as §§ 3-115; 6-303; 81-210; 81-402; 81-1201 through 81-1207; 81-1301 through 81-1313; 24-104; 24-2815, 24-2816; 39-1005; 67-2216; 70-302; 70-309; and others. The provisions permitting an amendment to a bill of exceptions (*Code* §§ 6-1401, 6-1309) were repealed by the Appellate Practice Act of 1965. If an amendment to a notice of appeal is permissible, it is only permissible under the language of Section 13 of the Appellate Practice Act of 1965, as amended, which in part, Paragraph (b), states "[a]t any stage of the proceedings, either before or after argument, the court shall by order, either with or without motion, provide for all necessary amendment, require the trial

court to make corrections in the record or transcript or certify what transpired below which does not appear from the record on appeal, require that additional portions of the record or transcript of proceedings be sent up, or require that a complete transcript of evidence and proceedings be prepared and sent up, or take any other action to perfect the appeal and record so that the appellate court can and will pass upon the appeal and not dismiss it." The attempted amendment here was not a necessary amendment to perfect the appeal so as to prevent its dismissal. Whether or not the amendment be allowed, the appeal is not subject to dismissal, so it is not necessary to determine this question relating to amendments.

 That where a delay in transmitting the appeal and transcript to this court is caused by the appellant such delay is not cause for dismissal, if the case can be docketed and heard at the same call at which it would have been heard had it been filed on the last day of the time required for its transmittal. I realize that this court in a division opinion has so held (*Hornsby v. Rodriguez*, 116 Ga. App. 234 (156 SE2d 830)); however, I am not in agreement with that opinion for the reason that the question is whether or not there was a late filing rather than a late hearing and further that the case of *Fort Oglethorpe v. Catoosa County*, 80 Ga. App. 188, 192 (55 SE2d 753) does not support the ruling made in the *Hornsby* case. In the *Fort Oglethorpe* case *it did not appear that the delay was caused by the appellant*, and one of the grounds for the motion to dismiss was that the certificate of the trial judge required the clerk to send the record in time for the "current term" rather than a later named term. As to this, the court merely held that the Constitution and statutes and rules of court involved controlled the term at which the case was returnable rather than the language in the judge's order, and that the case, because of the time of docketing, was actually returnable to the proper term. No question was decided in that case as was decided in the *Hornsby* case. Further, it is not necessary to reiterate the doubtful ruling in the *Hornsby* case to decide the present case.

Quillian, Judge, dissenting from Division 4. I can not agree that the Workmen's Compensation Board had exclusive jurisdic-

tion of any action resulting from the deceased's death. The petition did not disclose, nor was there in my opinion sufficient evidence, circumstantial or otherwise, to support a finding that on the day the deceased was killed the defendant had in its employ as many as ten employees within the State. *Borochoff v. Fowler,* 98 Ga. App. 411 (1), 414 (105 SE2d 764). While the witness, Mr. Disharoon, testified that at the time the case was tried the defendant had over three hundred employees in its Atlanta office, this was nearly two years subsequent to the date on which the deceased sustained the fatal injury.

Although the rule of evidence is well established that a status once proved to exist continues until there is proof of a change or adequate cause for assuming there has been a change (*Roberts v. Hill,* 81 Ga. App. 185 (2) (58 SE2d 465)), there is, however, no presumption that a present proven status existed in the past. This is made clear in *Glenn v. Tankersley,* 187 Ga. 129, 130 (7) (200 SE 709): "The doctrine of continuity, that is, that a state of things proved to have once existed is presumed to have continued to exist until a change or some adequate cause of change appears (*Anderson v. Blythe,* 54 Ga. 507, 508), does not include a presumption either that something shown to exist will continue in the future, or that it had previously existed. The doctrine is limited to the presumption that something which has been shown to have existed has thereafter continued to exist."

In the writer's opinion this court has no authority to take judicial notice that American Oil Company or any other corporation has ten or more employees within this State.

I am authorized to state that Judge Whitman concurs in this dissent.