68901. NATIONAL OLD LINE INSURANCE COMPANY
v. LANE.
(323 SE2d 707)

BANKE, Presiding Judge.

Shellie Lane filed this action against National Old Line Insurance Company to recover actual and punitive damages and attorney fees based on the alleged fraud of one of the company's sales agents, David R. Haman, in inducing her to part with $21,500 for the purchase of several annuity contracts. The plaintiff alleged that Haman had misrepresented to her that she would be entitled to the return of all premiums, plus 7 percent interest, after the contracts had been in force for at least a year, whereas in actuality the cash value of the policies at the end of a year was considerably less than the amount of the premiums paid. This appeal by National Old Line follows the entry of a jury verdict awarding the plaintiff actual damages in the amount of $17,491, a figure representing the full amount of the payments shown to have been made by her to National Old Line, less the amount of two policy loans. The trial court directed a verdict against the plaintiff with respect to the prayer for attorney fees, based on her failure to introduce any evidence establishing the amount thereof, and the jury declined to award any punitive damages.

The following facts are undisputed. Haman became closely involved with the plaintiff's family following the death of her father in 1974. This involvement initially arose from Haman's association with an insurance company which had written insurance on the father's life, but it later expanded to offering help and advice in other "family

situations," to use Haman's own words. In 1976, the plaintiff became entitled to receive almost $100,000 in life insurance benefits as the result of the accidental death of her husband. Haman admitted that upon learning of this, he set about attempting to solicit insurance business from her. When the plaintiff remarried that same year, Haman asked her new husband, Bill Hutchinson, to come to work with him as an insurance agent. In September of 1976, Haman borrowed $2,000 from the plaintiff in order to expand his insurance agency to "make room" for Hutchinson. Because the amount of this loan was included in the $21,500 which the plaintiff sought to recover from National Old Line in the present lawsuit, the trial court directed a verdict in the insurance company's favor as to this portion of her claim.

Disregarding the $2,000 loan to Haman, the plaintiff established that, through Haman, she had made three payments to National Old Line totaling $19,500 — a $1,500 payment on July 13, 1976; a $3,000 payment on December 31, 1976; and a $15,000 payment on April 10, 1977. In return for these payments, National Old Line issued two annuity policies to her, the first on March 24, 1977, specifying a first year's premium of $1,500, and the second on April 1, 1977, specifying a first year's premium of $7,000. A third policy, specifying a first year's premium of $5,000, was issued in the name of the plaintiff's brother, George W. Carroll, Jr., on April 4, 1977. The plaintiff testified that she had expected her $15,000 payment to the company to result in the issuance of a $10,000 policy to her in addition to the $5,000 policy to her brother and that she consequently tried to get in touch with Haman after receiving the policies. Upon doing so, she learned that he had left town, and she did not hear from him or see him again until the trial of this case. Asked whether she had read the $1,500 policy issued to her on March 24, 1977, the appellant replied that she could not understand it and that she had relied upon Haman to explain it to her.

National Old Line presented evidence that it had made a $1,000 policy loan to the plaintiff on December 20, 1977, as well as a $1,009 policy loan to her brother on November 11, 1977. The jury's award of compensatory damages in the amount of $17,491 was evidently arrived at by deducting the amount of these two policy loans from the total of $19,500 which the plaintiff had paid to the company. In an apparent attempt to erase any remaining obligation which the company might otherwise have to the plaintiff on the annuity policies, the jury also specified in the verdict that its award "relieves the insurance company of all liability." However, this condition was not made a part of the trial court's judgment.

The defendant's primary contentions in this appeal are that the plaintiff failed to exercise due diligence to protect herself from injury; that Haman's conduct cannot be imputed to the company since he

was an independent contractor rather than an employee; that the plaintiff is without standing to assert any claim with respect to the $5,000 policy issued to her brother; and that because her own policies had at least some value, she was required to tender them back to the company as a condition precedent to seeking recovery of the entire amount of the premiums paid for them. *Held*:

1. The jury was authorized to conclude from the evidence that the plaintiff's reliance on Haman's alleged misrepresentations was reasonable, notwithstanding her failure to read the policies or the policy applications. "Where a confidential relationship is found to exist between employer and employee or principal and agent, the duty to read does not bar recovery against the employer or agent." *Dawes Mining Co. v. Callahan*, 246 Ga. 531, 535 (272 SE2d 267) (1980). See generally OCGA § 23-2-58. The existence of such a confidential relationship may be inferred from the evidence in this case.

2. The plaintiff was not required to establish the existence of a master-servant relationship between Haman and National Old Line in order to hold the company contractually liable for his conduct. Accord *Home Materials, Inc. v. Auto Owners Ins. Co.*, 250 Ga. 599, 602-603 (300 SE2d 139) (1983). "The principal accepted the contract procured by the agent and when it affirmed the contract it became responsible for the agent's acts. We know of no principle of law that would permit a principal to accept the benefits of a contract procured by fraud and at the same time be relieved of the agent's fraudulent conduct in procuring it." *W. T. Rawleigh Co. v. Kelly*, 78 Ga. App. 10, 14 (50 SE2d 113) (1948). See generally OCGA § 10-6-56. See also *United Ins. Co. of America v. Hodges*, 161 Ga. App. 146, 148 (291 SE2d 50) (1982).

3. We must agree with the defendant's contention that the plaintiff established no right of recovery with regard to the annuity policy issued to her brother. The plaintiff testified that she considered her payment of the $5,000 initial premium for the purchase of this policy to be nothing more or less than a $5,000 loan to her brother, which she expected her brother eventually to pay back to her. The application for the policy was signed by the brother alone, and, as intended, the policy was issued in his name alone. Under these circumstances, the plaintiff was clearly without standing either to recover damages based on the sale of this policy or to rescind it and recover the premium. Consequently, the jury's verdict cannot stand with respect to this portion of the plaintiff's claim, and the amount of the judgment must be reduced by $3,991, representing the $5,000 paid for the policy less the $1,009 which was set off against this portion of the recovery to cover the proceeds of a policy loan made to the brother.

4. We now turn to the defendant's contention that the plaintiff was not entitled to recover any portion of the remaining $14,500 in

premium payments without first having tendered the return of the policies. The evidence reveals that of this $14,500, only $8,500 was actually applied towards the purchase of annuity policies, the remaining $6,000 being unaccounted for. Obviously, the plaintiff cannot be expected to have tendered back policies which she never received, and this enumeration of error consequently has applicability only to the $8,500 in policies actually issued to her.

With respect to these policies, we agree with the defendant that, there being no proof that the policies were totally worthless, the plaintiff was not entitled to recover the full amount of the premiums paid for them except upon the theory of rescission. Generally speaking, " '[o]ne who has been fraudulently induced to purchase property may, after discovering the fraud, affirm the contract and sue for damage resulting from the fraud, or he may rescind the contract for fraud and, after offering to restore, recover the purchase price paid by him. [Cit.]' " *Corbin v. Lee*, 121 Ga. App. 784, 785-786 (175 SE2d 102) (1970).

The requirement that an offer of restoration be made as a condition precedent to seeking recovery of the purchase price is not, however, absolute. See *Rountree v. Davis*, 90 Ga. App. 223, 232 (82 SE2d 716) (1954). "Restoration does not require that the opposite party shall be placed in the exact situation in which he was before the exchange, but only that he be placed substantially in his original position, and that the party rescinding shall derive no unconscionable advantage from the rescission." *Fletcher v. Fletcher*, 158 Ga. 899, 900 (4) (124 SE 722) (1923). Accord *Henderson Warehouse Co. v. Brand*, 105 Ga. 217, 224 (31 SE 551) (1898); *Jones v. Gaskins*, 248 Ga. 510, 512 (284 SE2d 398) (1981). See generally OCGA § 13-4-62.

In the present case, the annuity policies represented nothing of any intrinsic value which the plaintiff could reasonably have been required to return to the defendant in order to prevent her from deriving an unconscionable benefit from the transactions. We accordingly hold that she was entitled to sue for rescission without making such a tender. The jury clearly based its award of damages on the theory that the plaintiff had repudiated the transaction, as is evidenced by its inclusion in the verdict of the proviso that the award of damages "relieves the insurance company of all liability." Such a condition appearing in a verdict has been held to be enforceable even though omitted from the judgment entered on the verdict. See *Lyons Mfg. Co. v. Wembley Ind.*, 253 Ga. 39 (315 SE2d 906) (1984).

5. The defendant enumerates as error the exclusion from evidence of several documentary exhibits which it had failed to list in the pre-trial order. These exhibits included a receipt specifying that the $1,500 annuity contract dated March 24, 1977, was "exactly the same as applied for and as represented"; an acknowledgement dated

March 30, 1977, pertaining to the same annuity contract and specifying that "this plan involves a long-range program and I understand that the amount of cash which may be withdrawn during the early years may be less than the aggregate amount of premium paid"; a schedule of projected and guaranteed values with respect to this same policy; a summary of benefits respecting the $7,000 policy; two letters sent to the plaintiff in June of 1978, notifying her that the policies had lapsed due to non-payment of the second annual premiums but would be continued as paid-up, deferred annuities; a copy of a $1,500 annuity contract issued to the plaintiff's husband, William Hutchinson, on March 22, 1977; and a copy of the $5,000 policy issued to her brother on April 4, 1977.

As a general rule, OCGA § 9-11-16, governing pre-trial orders, "should not be construed to preclude a party from introducing evidence relating to his case if less harsh sanctions are appropriate. At the same time broad discretion is reposed in the trial court whose decision will not be disturbed except in cases demonstrating a clear abuse of that discretion." *Klemme Cattle Co. v. Westwind Cattle Co.*, 156 Ga. App. 353 (1), 355 (274 SE2d 738) (1980).

In the present case, as in *Klemme*, the documentary evidence excluded from consideration would have added little to the defendant's case, particularly in view of the plaintiff's undisputed testimony that she could not read well and that she trusted and relied upon Mr. Haman to handle the transactions and interpret the documents to her. Furthermore, there was no evidence that the policy benefit schedules and summaries included in the defendant's offer of proof were ever in fact delivered to the plaintiff; and it does not appear that the annuity policies issued to her brother and her husband were relevant to any issue in the case. In view of all these circumstances, we hold that the trial court did not abuse its discretion in excluding the material from evidence based on the defendant's unexplained failure to list it in the pre-trial order. Compare *Ambler v. Archer*, 230 Ga. 281 (1) (196 SE2d 858) (1973), wherein the exclusion of the evidence in question was held to be error because it prevented the party from making out its side of the case before the jury.

6. We have carefully considered the defendant's remaining enumeration of error, which concerns several jury charges on the issue of agency, and have determined that it sets forth no ground for reversal.

7. For the above-stated reasons, the judgment of the trial court is affirmed on condition that the plaintiff consent to write off the sum of $3,991 from the $17,491 in damages awarded to her. Otherwise, the judgment stands reversed.

*Judgment affirmed on condition. Pope and Benham, JJ., concur.*

DECIDED NOVEMBER 6, 1984.

*J. Thomas Whelchel, John E. Bumgartner*, for appellant.
*Orion L. Douglass*, for appellee.