75127. GALLETTA et al. v. HILLCREST ABBEY WEST, INC.
(363 SE2d 265)

BIRDSONG, Chief Judge.

This is a suit for fraud in the sale of a cemetery plot and for desecration of a grave. The appellants purchased a plot from the appellee in 1982 for interment of their infant daughter. In 1983, the appellee began construction of a mausoleum or "feature crypt" in the section where appellants' daughter was buried. Appellants objected vehemently to placement of a mausoleum near the child's grave. The

appellants filed suit, contending it had been represented to them that a statue of a religious figure or similar feature would be erected on the then-existing base in the section where their daughter was buried, and that they bought the plot upon that representation. The appellants also sued for desecration of the child's grave, caused by an 80,000 pound concrete truck being driven over the grave so as to crush the child's casket, and the placement of building material on the grave, so that appellants could not now be sure where the grave is.

At trial, the court directed a verdict for the defendant cemetery, on the basis that appellants had not rescinded the contract by offering to restore the plot to the cemetery, and that the issue of desecration was not set out in the pre-trial order and the appellants' handwritten motion to amend the pretrial order on the third day of trial came too late.

The trial court denied appellants' motion for new trial on December 3, 1986. Appellants filed a notice of appeal on December 23. On January 28, six days after the date for filing the transcript as required by OCGA § 5-6-42, appellants moved for an extension of time to file the transcript, but this was outside the time allowed by OCGA § 5-6-39 (d) for such a motion. On January 30, the appellee filed an "Emergency Motion to Dismiss" the appeal, which was granted. *Held*:

1. The trial court found the appellants, though notified in September 1986 of the cost of the transcript and that the transcript was ready, failed to pay the costs and thus caused inexcusable and unreasonable delay in filing the transcript. Although appellants deny having received such notice, the trial court did not abuse its discretion and fact-finding powers in finding otherwise and in finding the 'delay to be inexcusable.

However, the threshold question whether the delay was *unreasonable* is a separate matter, and refers principally to the length and effect of the delay. OCGA § 5-6-48 (c). See *Young v. Climatrol &c. Distrib. Corp.*, 237 Ga. 53, 55 (226 SE2d 737). As to this question the determination of the trial court is a matter of legal discretion and is subject to review by the appellate courts. Id.

The time requirements of OCGA § 5-6-42 for filing the transcript are not jurisdictional, but are merely a means of avoiding delay so the case can be presented on the earliest possible calendar in the appellate courts. *Green v. Weaver*, 161 Ga. App. 295, 296 (291 SE2d 247). OCGA § 5-6-30 provides that the appellate practice article shall be liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case except as may be specifically referred to in the article. The section requiring filing of the transcript within 30 days (§ 5-6-42) is specifically designed to facilitate an appellate decision on the merits at the earliest possible date. *Green*, supra. Since it is not a jurisdictional requirement, the

demand for punctuality should not be so strict as to defeat the very purpose of the requirement by preventing an appeal altogether, unless the delay is unreasonable so as to affect the appeal itself. See *Gilland v. Leathers*, 141 Ga. App. 680 (234 SE2d 338). Thus the policy of the law is to avoid a dismissal of the appeal and reach the merits of the case where it is reasonable to do so. *Corbin v. First Nat. Bank*, 151 Ga. App. 33 (258 SE2d 697).

The date the transcript was to have been filed in this case was January 22. When the trial court dismissed the appeal on February 3, upon the appellee's "emergency" motion to dismiss, the transcript was thus eleven days late. It was filed February 3. There is no intimation that the appellee suffered any prejudice by this 11-day delay. The appeal was not stale; justice was not delayed nor had any inequity resulted, nor was there any intermediate change in conditions. See *Hornsby v. Rodriquez*, 116 Ga. App. 234 (156 SE2d 830). There is no indication the 11-day delay in filing the transcript prevented the placement of the case on the earliest possible calendar in this court (*Green*, supra) or delayed the docketing of the appeal and the hearing of the case in this court. See *American Oil Co. v. McCluskey*, 116 Ga. App. 706, 708-709 (158 SE2d 431). The record from the clerk below was in fact not docketed in this court until May 26, three and one-half months after the transcript was filed. Under these circumstances, it is difficult to conclude appellants' 11-day delay in paying for and filing the transcript, however inexcusable, was so unreasonable as to utterly remove their right of appeal.

The appellee contends this case is similar to *In re G. W. H.*, 168 Ga. App. 845 (310 SE2d 573). However, in that case the delay in filing the transcript was more than four months; obviously this delayed the docketing necessarily, and appellant was found responsible for that unreasonable and inexcusable delay of the filing of the transcript. In this case the delay in filing the transcript was 11 days and did not discernibly delay the docketing of the record in this court. (*In re G. W. H.*, in dictum, ascribes to the appellant the duty to file *the record* under OCGA §§ 5-6-41 and 5-6-42; in fact, this is the clerk's duty (OCGA § 5-6-43 (a)), and the appeal may be dismissed under OCGA § 5-6-48 (c) for unreasonable delay in filing *the record* only when such delay is caused by appellant's failure to pay costs within 20 days of notice by registered or certified mail.)

The trial court further erred in dismissing this appeal under an error of law. The trial court stated in its finding of unreasonable delay that the transcript could have been filed in September 1986 when the reporter completed it, and that the case "languished . . . without benefit of a transcript" until the trial court denied appellant's motion for new trial on December 3. Thus, "[f]rom the date the transcript was ready for filing to the date the court ruled on the motion [for new

trial] without a transcript, the [appellants] had a period exceeding two months within which they should have filed the transcript. This in itself is inexcusable and unreasonable delay." The trial court therefore adjudged the 11-day delay in filing of the transcript within 30 days of the notice of appeal to be unreasonable because appellants failed to file the transcript in September, three months before the notice of appeal was filed. This was error. The appellant had no obligation to file the transcript until his motion for new trial was disposed of. *Whitton v. State*, 174 Ga. App. 634, 635-636 (331 SE2d 10). The discretion granted in OCGA § 5-6-48 to the trial court to dismiss an appeal for unreasonable and inexcusable delay in filing the transcript within 30 days of notice of appeal cannot hark back to whether in the trial court's estimation the appellant should have filed the transcript for consideration of a motion for new trial or at some other earlier point. There is no mandatory requirement to file a transcript for motion for new trial (see OCGA § 5-5-40), and the failure to do so or the failure to pay for and file the transcript as soon as it is ready (in this case, September) has no controlling bearing on the question of unreasonable delay in filing the transcript after notice of appeal as required by OCGA § 5-6-42.

We therefore conclude the trial court erred in dismissing this appeal.

2. The trial court did not err in directing a verdict for the appellee on the fraud issue. The record clearly shows the appellants did not rescind the contract, that is, did not restore or offer to restore their benefit of the contract to the appellee. OCGA § 13-4-60. The reason for the rescission requirement is well expressed in *Brown v. Ragsdale Motor Co.*, 65 Ga. App. 727, 729-732 (16 SE2d 176). See also *Brown v. Techdata Corp.*, 238 Ga. 622, 625-627 (234 SE2d 787); *City Dodge v. Gardner*, 232 Ga. 766 (208 SE2d 794).

The decision in *Rountree v. Davis*, 90 Ga. App. 223 (82 SE2d 716) does not require a different result; it was founded upon the peculiar facts in that case, which were that the plaintiff no longer had the property to tender back, and in any case is against the grain of the law. Similarly, the decision in *National Old Line Ins. Co. v. Lane*, 172 Ga. App. 519 (323 SE2d 707) was based upon the more pertinent fact that the subject property was worthless and therefore the plaintiff did not retain an unconscionable benefit while suing for fraud in the inducement.

The appellants contend the cemetery plot is worthless to them; but it obviously would have some value to the appellee and therefore the appellants could not sue for fraud while retaining the benefit of the contract. And, while it seems that as a matter of fairness the appellants should not have had to disinter their child's body and rebury it in order to plead that they were damaged by the appellee's

fraud, still the rescission statute and the cases (see *Brown v. Techdata*, supra) do not require actual restoration but only a tender, which would have been very appropriate in this case. Appellants did not do this, and thus the trial court did not err in directing a verdict for the appellee on the fraud issue.

3. The trial court erred in disallowing appellants' amendment to the pretrial order on the third day of trial so as to include the claim for desecration of the grave stated in the plaintiffs' complaint. By that time, the issue of evidence of desecration had been introduced throughout the trial without any objection being made that it had been excluded from the pretrial order. OCGA § 9-11-16, which provides that the pretrial order "controls the subsequent course of the action unless modified at the trial to prevent manifest injustice," must be applied in light of the *mandatory* provisions of OCGA § 9-11-15 (b). *Carreras v. Austell Box Board Corp.*, 154 Ga. App. 135, 137-138 (267 SE2d 792). That code section provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, "they *shall* be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment." (Emphasis supplied.) This rule of law re the mandatory amendment of a pretrial order (as a pleading) applies in principle even more emphatically when, as in this case, an issue which *is* raised by the pleadings and is tried by express or implied consent is sought to be preserved by amendment of the pretrial order. The pretrial order is, after all, a functionary of the CPA designed to judiciously reach the merits of the case. OCGA § 9-11-16 (b) provides that a pretrial order controls the course of the action "unless modified *at the trial to prevent manifest injustice*." (Emphasis supplied.) The refusal of this pretrial amendment to conform the *pretrial order* to the issues actually raised by the pleadings and entered at trial without objection, i.e., tried by implied consent, operated contrary to OCGA § 9-11-15 (b) and to the spirit of the Act that cases be decided on their merits and that decisions based on other considerations be avoided. See *Ambler v. Archer*, 230 Ga. 281, 288 (196 SE2d 858).

The appellee urges that this issue was not tried by its implied consent because in a motion in limine, appellee objected to any evidence relating to people walking on graves or building material being present on graves. However, in that motion appellee sought to exclude the evidence because the cemetery rules and regulations gave it the right of ingress and egress and the evidence was "not relevant to any issue in the case." The trial court denied this motion, thereby establishing at that point the appellants' right to raise the issue as relevant to the case. In fact, the appellee cemetery in the pretrial order gave,

as a contention in the case, the assertion that the deed of interment "does not prohibit the defendant [cemetery] from intrusion over the . . . grave for maintenance and other necessary useful activity." This statement can only indicate the appellee knew and expected such "intrusion" to be an issue in the case. At no time did the appellee ever, on grounds that the issue had been eliminated from the trial by its omission from the pretrial order, object to the evidence of desecration. On the third day of trial when the appellants thought to offer an amendment, not a word was said against it by the appellee. For all that appears in the record, appellee's only "surprise" came when the trial court refused the amendment and directed a verdict for the appellee on the desecration issue. In truth, the appellee never has, until appeal, contended the issue was removed from the case by its omission from the pretrial order. See *Hagger v. State*, 179 Ga. App. 16 (345 SE2d 118); *Dobbs v. Titan Properties*, 178 Ga. App. 389, 392 (343 SE2d 419); *Gurin v. Gen. Motors Corp.*, 171 Ga. App. 159, 160 (1) (318 SE2d 830).

The appellee's contention on appeal that it thought the evidence was admitted only to prove damages for the fraud of representing that a religious statue or other such feature without present intention to perform, is not logical and is unsupported by any indication in the record.

We conclude the issue of desecration raised in the pleadings, though omitted from the pretrial order, was in fact admitted by the trial court, and the later denial of appellants' proffered amendment to the pretrial order was therefore without force, since the failure to amend as to issues in fact tried does not affect the results of trial, under OCGA § 9-11-15 (b); that moreover the appellee never until this appeal raised a specific objection to the trial of the issue based on its omission from the pretrial order; and that the appellee never exhibited any "surprise" and in any case the appellee cannot claim it was surprised by the actual trial of this issue since it never made any objection to it for having been left out of the pretrial order.

Therefore, the denial of appellant's proffered amendment to the pretrial order and direction of a verdict for the appellee on the issue of desecration were error, the issue having been raised in the pleadings, admitted by the trial court, tried in fact, and never objected to by the appellee on grounds it had been eliminated by the pretrial order.

4. It follows that the trial court erred in dismissing the appeal, and erred in granting a directed verdict on the issue of desecration on grounds it had been eliminated from the case by the pretrial order, and therefore erred in denying appellants' motion for new trial on that ground. But the trial court did not err in granting a directed verdict on the issue of fraud in the sale of the cemetery plot and de-

nying a new trial on that ground.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Pope, J., concur.*

## ON MOTION FOR REHEARING.

The appellee cemetery says it is "extremely surprised" at the holding in Division 3, inasmuch as evidence of desecration of the grave was never given, and inasmuch as the Gallettas in court said their only issue was fraud and never informed anybody they were claiming desecration.

The appellee makes many misstatements of fact. The desecration issue was raised by evidence no fewer than six times during the plaintiffs' presentation, including by cross-examination of the cemetery's president, who admitted that an 80,000 pound concrete truck would probably crush a vault. The matter of desecration occupies some 34 pages of trial transcript, at least. Furthermore, the cemetery in its appeal brief conceded that after the trial court denied its motion in limine to keep out evidence of people walking on graves and building material being placed on graves, "the Gallettas offered such evidence."

It is misleading for the appellee cemetery to contend as fact that in 25 transcript pages of discussion about "plaintiffs' theories," the plaintiffs never "informed the court . . . that their theory . . . was actually desecration. . . . The appellant never mentioned or even hinted at the issue of desecration during this argument [which] centered on whether the appellants' [sic] had proved rescission and fraud." If appellee's counsel had realized that desecration was an issue, he would have certainly addressed it in his argument on the appellee's motion for directed verdict.

Having made an issue of desecration in the pleadings, having won the right to admit evidence of it, and having admitted the evidence without pertinent objection, this was all the informing plaintiffs needed to do to pursue their claim for desecration. This "surprise" appellee professes on appeal appears nowhere in the record below, not even when the plaintiffs offered their pre-trial amendment; but having instead sat mutely observing the plaintiffs put the issue in evidence, the appellee is bound to know it better than anybody, and cannot possibly claim surprise.

The discussion appellee refers to, where plaintiffs allegedly made a "judicial admission" that they were claiming only fraud, occurred during the hour of argument on appellee's motion for directed verdict based solely on the fraud count. The point was whether plaintiffs had, or had made, a claim for fraud or a claim for breach of contract (since they had not rescinded the contract). The plaintiffs stated their claim

was for fraud; this was the only thing discussed because this was the only ground upon which the appellee had moved for directed verdict. It was not up to plaintiffs to hint or mention grave desecration during this argument about fraud and rescission. Desecration was raised in the pleadings and in the evidence many times; if the appellee believed, as it now claims, that nevertheless the plaintiffs had waived or abandoned the issue by having omitted to put it in the pre-trial order, then it was up to the appellee to object to it and move for directed verdict on the desecration issue.

It appears the appellee was so taken up with the fraud issue that it failed to notice when desecration evidence was offered, which may be why it failed to object. But then, if when the plaintiff-appellants first raised evidence of desecration, the appellee had objected on grounds the issue was not in the pre-trial order, the plaintiffs, having put it in their complaint, would have moved to correct that oversight, and clearly there would have been no reason then not to conform the pretrial order under § 9-11-16. By thus seizing the tricky advantage of not objecting, the appellee is bound by its effect, which was to allow the issue to be tried, which under the mandatory provisions of OCGA § 9-11-15 (b) would have operated to conform the pre-trial order even if the issue never had been raised in the complaint.

The remainder of the appellee's motion merely repeats the questions already decided in the opinion, and disputes the case authority in a manner similar to its description of the proceedings.

*Motion for rehearing denied.*

DECIDED NOVEMBER 4, 1987 —
REHEARING DENIED NOVEMBER 20, 1987 —

*Stephen R. Yekel*, for appellants.
*Stanley M. Karsman, David R. Smith*, for appellee.