STEVENSON *vs.* THE STATE OF GEORGIA.

1. The verdict is not unsupported by testimony.

2. Where on a trial for murder witnesses testified that, having heard the report of a gun and the screams of a woman some three hundred yards away, they ran immediately to her assistance; and when in speaking distance she cried for help; that they saw she had been shot—was bleeding profusely—could move nothing but her hands, and whilst begging that something be done for her, she stated that the defendant had shot her; such testimony was admissible as part of the *res gestæ*.

  (*a.*) That the deceased testified on the committing trial would not *per se* exclude any sayings which were a part of the *res gestæ*.

3. Where the character of a witness who is sworn on the direct examination is sought to be impeached by disproving facts testified to by him, it is competent for the state to introduce testimony to the effect that the facts stated by him are true, even though such corroboration involves information received from him.

4. A grand jury drawn by three of the six jury commissioners, the ordinary and the clerk of the superior court, was not illegally drawn: It is immaterial whether the clerk is a member of the board or not; if so, there were five out of eight present; if not, four out of seven present—in either case a majority were present, and the drawing was lawful.

  (*a.*) If a majority of the commissioners proper should have been present, the defect should have been taken advantage of by plea in abatement on arraignment, unless there were some sufficient legal reason to take this case out of the rule.

(*b.*) That thirty-two instead of thirty grand jurors were drawn, is not such an irregularity as would quash an indictment, much less arrest a verdict.

September 19th, 1882.

Criminal Law. Indictment. New Trial. Jurors. Before Judge ERWIN. Gwinnett Superior Court. March Term, 1882.

Elbert M. Stevenson was indicted for the murder of Selina C. Stevenson. On the trial the evidence for the state was, in brief, as follows:

The deceased was shot with a gun. Before her death, defendant was arrested for the crime, and on the committing trial she testified substantially as follows: She was forty-five or forty-six years of age, and defendant was younger. Three or four years prior to the killing, he had made improper proposals to her, and upon her rejecting them, had said that if she would not go with him, he would stop her from " traveling here." Some time before the homicide, he renewed his proposals, and said she should not live with any body else. She was thinking of living with another, but defendant was not aware of it so far as she knew. He was the nephew of her deceased husband. On the morning of the shooting, she saw him in the lane not far from her house. Her son, a boy of about fourteen years of age, said he would take his gun and go around the field. After he left, she proceeded with her household duties, and while beginning to build a fire she was shot. As she fell, she saw defendant run past the open doorway.

The other testimony for the state showed that two men were at work about three hundred yards from the house of Mrs. Stevenson. They heard a gun fire, followed by screaming. They ran to the house, reaching it about five or six minutes after the shot, and found Mrs. Stevenson lying on the floor, wounded and calling for assistance. She could only move her hands; she said that defendant

had shot her.    Tracks were found leading in the direction which she stated that defendant had taken.    Defendant made contradictory statements as to his presence at the scene of the crime that morning.    Deceased was engaged to be married at the time of the shooting.

The evidence for the defendant was to the effect that the son of the deceased was very hostile towards defendant on account of the intimate relations of the latter with his mother; that he had threatened before that time to shoot defendant; that after the shooting he admitted that he took his gun and went toward the field, and that seeing defendant going to the house, he went back and shot at defendant, but missed him and shot his mother; that he admitted having thrown an axe at defendant on a former occasion; that defendant lived at the house of deceased for a considerable time.    The statement of defendant substantially conformed to this testimony, and added the details of his connection with deceased.

In rebuttal, counsel for the state introduced testimony to show that witnesses had accompanied the son of deceased on the day after the shooting to the place where he said he had been on that day; that they found a small track of a bare-foot which fitted the foot of the boy; that where he stated that he had shot, gun-wadding was found; that he had been to a place where he stated that he had eaten a watermelon; that a week before the shooting defendant bought a box of caps and some squirrel shot.

The son denied the threats alleged to have been made by him and the other conduct attributed to him.

The jury found the defendant guilty.    He moved for a new trial on the grounds set. out in the decision, which was overruled, and he excepted.

F. F. JUHAN; S. J. WINN, for plaintiff in error.

CLIFFORD ANDERSON, attorney general, by S. HALL A. L. MITCHELL, solicitor general, for the state.

CRAWFORD, Justice.

The errors complained of in this case are:

(1.) That the verdict is contrary to law and evidence.

(2.) That the court erred in permitting McGee and Terry, witnesses for the prosecution, to give in evidence to the jury the sayings of the deceased, charging the prisoner with the commission of the crime, the more especially as the sworn testimony of the deceased taken on the committing trial had been previously admitted.

(3.) That the court erred in allowing the witnesses, William Davis and William Davis, jr., to give in evidence to the jury the sayings of Lovick Stevenson, in an effort on his part to explain and account for his whereabouts, and what he was doing at the time of the commission of the crime charged.

Besides the above grounds set out in a motion for a new trial, a further motion in arrest of judgment was made: Because the grand jury finding the bill of indictment was not drawn by the ordinary, together with the jury commissioners and clerk of the superior court of the county, nor was the said jury drawn in accordance with the order of the judge.

1. Upon the first question made, as to whether or not the verdict is contrary to evidence, we cannot say that it is; it most certainly is not if the testimony of the deceased and the physician is true. There are but few, if any, cases wholly free from that sort of doubt which almost invariably arises upon the application of the law to the facts, or upon the facts themselves. When, therefore, a jury under oath has heard and weighed the evidence, and finds that the accused is beyond any reasonable doubt guilty, and the presiding judge declines to interfere, it should stand as truth, unless it is apparent to this court that there is an absence of testimony to support it. It does not so appear by this record.

2. Did the court err in admitting the sayings of deceased

charging the prisoner with the commission of the crime, the more especially after she had testified at the commitment trial?

The witnesses whose testimony is here objected to, having heard the report of a gun, and the screams of a woman some three hundred yards away from them, ran immediately to her assistance, and when in speaking distance she cried out for help; they saw that she had been shot—was bleeding freely—could move nothing but her hands—and whilst begging that something be done for her, she said that the defendant had shot her. This was about three or five minutes after the shooting. The testimony was certainly admissible as a part of the *res gestæ* under the numerous rulings of this court, the latest of which may be seen in the case of *Johnson vs. The State*, 65 *Ga.*, 94.

That the deceased had sworn as a witness on the commitment trial would not *per se* exclude any sayings which were a part of the *res gestæ*, nor are they to be confounded with dying declarations.

3. The next assignment of error is upon the admission of the evidence of Wm. Davis and Wm. Davis, Jr., as to the sayings of Lovick Stevenson, in an effort on his part to explain his whereabouts, and what he was doing at the time of the commission of the murder.

It appears from the record that Lovick Stevenson, the son of the deceased, a lad between fourteen and fifteen years of age, had been sworn as a witness for the state, and among other things had testified where he was on the day of the killing, where he went, and what he was doing. The defendant, in his statement and by his witnesses, endeavored to impeach his testimony by showing that he was not where he claimed to have been but that he was at the house, and, seeing his mother and the accused in criminal connection, had fired at him and shot his mother.

The state, therefore, to corroborate his testimony, in-

troduced the Davises to show that he had gone away from the house, was where he said he was, went where he said he went, and did the things which he said he had done. The information upon which they acted of course was received from him.

"Where the character of a witness who is sworn on the direct examination is impeached, it is competent for the state to introduce testimony to the effect that the facts testified to by the discredited witness are true." 16 *Ga.*, 200.

One of the modes of impeaching is by disproving the facts testified to by the witness. Shall he, then, not be allowed to corroborate and support his testimony, even though that support and corroboration involved information received from him? Code, §3771.

4. Should the judgment have been arrested upon the grounds stated?

The grand jury had been drawn to serve at an adjourned term of the superior court, and the persons officiating at the drawing were three of the jury commissioners, the ordinary and the clerk of the superior court.

Whether the clerk is a member of the board or not it is unnecessary to decide; if he is, there were five out of eight at the drawing present, if he is not, then there were four out of seven present; so that in either case the drawing of the jury was by a majority of the board.

"A joint authority given to any number of persons, or officers, may be executed by a majority of them, unless it is otherwise declared." Code, §4, par. 5.

But, conceding that a majority of the six jury commissioners proper should have been present, ought it not to have been taken advantage of by plea in abatement on arraignment, as provided for in §4639 of the Code, and not to have waited until after verdict? We so hold, unless there exists some good and sufficient legal reason to take it out of the rule.

This view seems to be clearly intimated in the case of

*Finnegan vs. The State*, 57th Ga., 429, where it was held by a majority of the court that the grand jury was illegally drawn.

Another exception taken here, but not made below, is that thirty-two instead of thirty jurors were drawn. Granting that such a point can be entertained by this court, we think that it falls far short of such an irregularity as should quash an indictment, much less arrest a verdict. *Williams vs. The State*, September term, 1882.

Judgment affirmed.