## BRAY *et ux. vs.* LATHAM.

1. The controlling question in the case being whether the defendant set fire to his own house and thereby caused the damage to plaintiff complained of, and the plaintiff having testified that a third person stated in the hearing of defendant that he (defendant) did it, to which he made no response, and this third person when examined in behalf of defendant having denied making the statement, it was error not to allow the plaintiff, in reply, to prove by another witness that he was present and heard the defendant's witness make the statement at the time and place mentioned by the plaintiff in her testimony.   The evidence thus offered in reply would tend to impeach the defendant's witness and to support the credit of the plaintiff.

2. A tort to health already impaired, is redressed by giving damages both for any further impairment, and for any obstruction occasioned by the tort to recovery from existing disease.   Wrongfully to cause, aggravate or protract illness, is an injury to health.

3. It is equally the duty of the trial judge to instruct the jury upon the subject of damages, in a proper case, whether he knows or does not know what view they will take of the evidence.   His lack of foreknowledge has no relevancy to the matter, and should not be mentioned to the jury as a reason for charging them fully on one of the essential elements of the action.

November 12, 1888.

Witness.   Evidence.   Torts.   Damages.   Charge of court.   Before Judge VAN EPPS.   City court of Atlanta. June term, 1888.

Reported in the decision.

ARNOLD & ARNOLD, for plaintiffs.

T. P. WESTMORELAND and BIGBY & DORSEY, for defendant.

BLECKLEY, Chief Justice.

The action was by a tenant and his wife against their landlord, and was based upon an alleged arson committed by the defendant when overinsured upon the premises and upon a storehouse adjoining, with a stock of goods therein, the imputed motive of the burning being to destroy the property and collect the insurance. The fire occurred shortly after midnight, in winter weather, and consumed both buildings. The wife, it was alleged, barely escaped with life; suffered from fright, exertion and exposure; caught cold in the night air whilst trying, without clothes, to save the lives of her children; fainted and was unconscious; was confined to her bed for weeks; the fright and exertion brought on *prolapsus uteri*, from which she still suffers and which has become incurable; and she is permanently injured in health and strength. Damages, actual and punitive, were laid at ten thousand dollars. Much evidence was introduced for each party; the jury found for the defendant, and the plaintiffs moved, on numerous grounds, for a new trial, which was denied.

1. It was undoubtedly error not to grant a new trial on the fourth ground of the motion. Mrs. Bray, one of the plaintiffs, testified as a witness in her own behalf. It was a part of her testimony that the defendant took her to a certain place, shortly after the fire, and that whilst he was there and in hearing, Mrs. Akin said that he "did it," meaning that he, the defendant, had fired the building, and defendant made no reply to her statement. The materiality of this testimony was its

v 81-41

tendency to establish an admission by silence.  Its effect
was for the jury, the rule being that "before uncontra-
dicted statements in the presence of a party are held to
be implied admissions against him and his interests,
there should be evidence of direct declarations of that
kind which naturally call on him to contradict them."
22 *Ga.* 453, citing. 1 Greenl. Ev. §199. After the plain-
tiffs' evidence in chief was concluded, the defendant
introduced himself and Mrs. Akin.  He testified that
he heard no such statement, and she testified that she
made no such.   In reply to this, the plaintiffs offered a
witness, Coleman, who was present at the time and
place which Mrs. Bray had mentioned in her testimony,
to prove that Mrs. Akin did say, then and there, what
Mrs. Bray had imputed to her.   The court rejected this
evidence, first, as not in reply or rebuttal, and secondly,
because Coleman did not see the defendant, and did not
know whether he was present at the time and place or
not.  Although Coleman did not know the defendant was
present, Mrs. Bray did, and had so testified.  And she
had also testified that Coleman was present.   True, the
defendant swore he did not hear the statement, but Mrs.
Bray testified he was near enough to hear it; and
whether he heard it or not was a question for the jury.
At all events, Mrs. Bray was a very material witness in
the case, not only on this point but others; and the
contradiction of her by Mrs. Akin was a direct impeach-
ment of her credit.   "A witness may be impeached by
disproving the facts testified to by him."   Code, §3871.
Mrs. Akin having testified that she did not say what
Mrs. Bray had testified she did say, the proposed evi-
dence of Coleman would have been a direct support to
Mrs. Bray's credibility, as well as a direct attack upon
Mrs. Akin's credit.   "Rebutting testimony to that of a
specified witness is any legal testimony which bears

against the truth or accuracy of what that witness has sworn." *Davis vs. C. & M. R. R. Co.*, 77 *Ga.* 323. In *Stevenson vs. The State*, 69 *Ga.* 72(3), a witness for the State had said he was at a particular place, and the defendant had introduced evidence to show he was not there but at another place. The State, in rebuttal, adduced evidence to show that he was at the place at which he said he was, and not at the other place. This was held to be proper testimony, because it went to support his credit. In *John vs. The State*, 16 *Ga.* 200 (4), the only answer made by the defendant to the evidence of the main witness against him, was an attack upon general character for truth and veracity. In answer to this attack, it was held that the State might adduce more evidence to the principal facts, those to which the attacked witness had testified on his examination in chief. In *Rust vs. Shackleford*, 47 *Ga.* 538, the plaintiff testified to a sale of the cotton in question; the defendant testified the sale was conditional. It was proposed to prove by the plaintiff in rebuttal that the sale was not conditional, but absolute; and it was held erroneous not to allow this to be done. In *Bryan vs. Walton*, 20 *Ga.* 510(7), it is said, " Plaintiff had made out a *prima facie* case; it had been assailed vigorously by the defendant, and the purpose of this proof was to fortify his title thus attacked. It was, we apprehend, competent to do so. It is a matter of every-day practice in the courts." And see *Walker vs. Walker*, 14 *Ga.* 242(5); *Bird vs. The State*, *Id.* 43; *Choice vs. The State*, 31 *Ga.* 424 (2). A new trial results from the improper exclusion of any material evidence (in a case like the present) on the main question in controversy.

2. Several matters in the charge of the court are complained of. We deem it necessary to notice only two, those referred to in the 12th and 13th grounds of the

motion. As set out in the 12th ground, the court in-
structed the jury, "If you believe from the evidence
that the plaintiff, prior to the fire, was not in good
health, but was afflicted with falling or displacement
of the womb, to the extent that such sickness or disor-
der contributed to her unsound condition after the fire,
she could not recover. She could only recover  .  .  .
for such injuries as you believe followed upon the fire,"
etc., etc.

Putting the jury to consider how much previous may
have contributed to subsequent ill health, seems too
much like treating the former as contributory wrong.
Whereas, previous ill-health should be considered as a
state calling for more forbearance on the part of a
wrong-doer, than a state of robust health. The invalid
is not less but more sacred, especially against assault by
midnight fire, than a person free from infirmity. Where
the subject of a tort is already diseased, the question
should be how much, if any, the tort contributed to ag-
gravate or protract the disorder. There is not to be an
apportionment of damages, as in cases of contributory
or comparative negligence, although the damages are to
be adjusted to the agency of the defendant in making
the bad health worse or more lasting. If this defendant
did either by the alleged tort (as to which we are to be
understood as having no opinion), he is liable. A tort
to health already impaired cannot be redressed except
by giving damages for any further impairment, and for
any obstruction occasioned by the tort to recovery from
existing maladies. To cause sickness wrongfully, or to
aggravate or protract it, is an injury to health for which
damages are recoverable. See Lapleine *vs.* Morgan's,
etc., 4 South. Rep. 875, and authorities cited.

3. In the 13th ground of the motion, this expression
is found, "I have charged you fully upon the subject of

damages, because the trial judge cannot tell in advance what view the jury will take of the evidence." There is danger that this may have been understood by the jury as an intimation that the judge thought the evidence did not require any charge at all upon the subject of damages, and that he only touched the subject because they might differ with him. We have no idea that it was the purpose to make any such intimation, but we say the jury might naturally so have understood. It was said in argument, that the remark was an apology to the jury for mentioning damages in their hearing. This is a very strained and forced construction; but whether as apology or as explanation, the remark, we think, was not appropriate. If the judge could know and did know exactly how the jury would look upon the evidence, what weight they would give to it, and all the conclusions they would arrive at, it would still be his duty, in a proper case, to instruct them as fully upon the subject of damages as that element of the action called for. His lack of foreknowledge is wholly irrelevant, both to his own duty and that of the jury; and all irrelevant matter ought to be omitted from the charge, especially such irrelevancies as may by any chance be construed into an intimation from the bench adverse to either party respecting the merits of the case on the facts.

Judgment reversed.