26209. STANDARD BRICK & TILE CO. *v.* POSEY.

DECIDED NOVEMBER 10, 1937.

*Jule Felton,* for plaintiff. *C. W. Foy,* for defendant.

MACINTYRE, J. Standard Brick and Tile Company sued J. F. Posey on an open account, to recover $114.48, with interest thereon from June 2, 1933. The verified copy of the account attached to the petition is dated November 11, 1933, at Macon, Georgia, and shows an item of 13,800 brick, dated June 2, 1933, and amounting to $114.48. The original answer admitted the allegation of the petition that Posey was a resident of Taylor County, and denied indebtedness. Subsequently the defendant amended

his answer by pleading (1) "that the account sued on . . is for a car of brick;" (2) "that the brick was bought from Mr. J. A. Childs, and that upon the arrival of the brick at Butler on the 12th day of June, 1933, in the defendant's store, in the town of Butler, defendant paid to J. A. Childs the full amount . . of the account in cash." At the conclusion of the evidence the jury found for the defendant. The exception is to the judgment overruling the motion for new trial containing the general and two special grounds.

The brief of evidence follows: "J. F. Posey was called to the stand by the attorney for the plaintiff as the opposite party, subject to cross-examination. J. F. Posey, having been sworn, testified on cross-examination as follows: 'On or about the 2d day of June, 1933, I received a car of brick shipped to me at Butler. They came from the Standard Brick & Tile Company, the plaintiff in this case. We bought them for resale. We resold them for our own benefit. I did not pay the plaintiff for them. I paid their agent, Mr. J. A. Childs. Mr. Childs is dead. I did not pay the company in Macon the cash. I paid Mr. Childs. I had no dealings with the company whatever. I did not even know the company until the brick came. I gave Mr. Childs the order just as I had bought brick before. I have not paid the company any cash on brick. I paid Mr. Childs.' Examination by C. W. Foy, attorney for the defendant: 'I bought the brick from Mr. Archie Childs. I paid Mr. Childs for the brick. I never did buy any brick from the Standard Brick & Tile Company. I never had any dealings with them one way or another. The only way I knew anything about the company was just buying brick from Mr. Childs.' Re-examination by Mr. Felton: 'I knew Mr. Childs did not own a brick plant himself—I did not think he did. If he owned any brick I did not know anything about it.' By the court: 'I assume it is admitted that Mr. Childs was the agent of the Standard Brick & Tile Company; is that true?' By Mr. Foy: 'That is my understanding . . that he was selling the brick for the Standard Brick & Tile Company. We presume that that is true. I really don't know. I am not admitting it.' Continuation of testimony of Mr. J. F. Posey, on examination of Mr. Foy: 'I bought the brick from Mr. Archie Childs. . . I have bought brick from Mr. Childs before—one or two cars, I don't remember which. I know I bought one, and possibly two.'

"J. F. Posey, recalled to the stand by plaintiff, testified as follows: 'I admit that I sent to the plaintiff a note on the bottom of a letter I received from the Standard Brick & Tile Company dated July 13, 1933. I was down sick, and Allen over there wrote it for me.' Plaintiff tendered in evidence the following letter from plaintiff to J. F. Posey: 'July 13, 1933. Dear Sir: We again call your attention to our notice of June 2, amounting to $114.48. Terms of this shipment were cash. Discount in 15 days, or 30 days net. Kindly let us have check to cover, and oblige. Yours truly, Standard Brick & Tile Company, W. E. Dunwoody, President.' The letter contained the following reply: 'Gentlemen: This account has been paid to your salesman Mr. Childs. Yours truly, J. F. Posey.' Continuation of testimony of J. F. Posey on examination by the plaintiff: 'Mr. Childs must have been the salesman or agent, or whatever you call it, of the plaintiff. Agent and saleman is the same thing. I did not think Mr. Childs was manufacturing brick, but I did not know. As to how I paid Mr. Childs for those brick, just so he was paid, does that make any difference? Mr. Childs owed me some, and he had given me a check for, I think, one hundred and some odd dollars that he owed me on a note. This check was turned down, and I kept it for a pretty good while; and one day he gave me some county warrants on it, and then he gave me, I think, $30 in money. Previous to that I had bought a car of brick from Mr. Childs. I don't recall from what company; it was one in Macon though. I think it was the Cherokee, and I just gave him credit on my books for the car of brick. He owed me some on the books, and he asked me to do that, and I did, and everything was plumb satisfactory. In this case I gave him this unpaid check in settlement for the car of brick. I did not credit his account. It was a check. He gave me that check before I bought the brick sued for in this case. I did not pay him cash for these brick. He asked me to take a car of brick on that check.' Re-examination by Mr. Foy: 'Mr. Childs came to me to sell me a car of brick on what he owed. I traded with him and took the car of brick on what he owed me. I had done the same thing before and everything was satisfactory.' Re-examination by Mr. Felton: 'I said I had done it before. At that time I don't know what company he represented. My recollection is that it was the Cherokee.' C. W. Foy [counsel for the

defendant] sworn as a witness for the defendant: 'On several occasions Mr. Childs discussed the sale of the car of brick to Mr. Posey with me, and on each occasion told me the brick had been paid for and the company had been settled with.'"

The position of counsel for the plaintiff is that J. F. Posey purchased the brick from it through its agent J. A. Childs, and owed it for them. The contention of counsel for the defendant is stated in his brief as follows: "These brick were not purchased from the plaintiff, but were purchased from Mr. Childs individually." Obviously this case hinges on the question of "concealed agency." The Code, § 4-313 declares: "The principal shall have advantage of his agent's contracts in the same manner as he shall be bound by them, so far as they come within the scope of his agency. If, however, the agency shall have been concealed, the party dealing with him may set up any defense against the principal which he has against the agent." In *Lovelace* v. *Reliable Garage*, 33 *Ga. App.* 289 (125 S. E. 877), Jenkins, P. J., speaking for a united court, said: "Thus it is well settled that the rights of an undisclosed principal are subject to claims acquired in good faith against the agent. In other words, a third person who contracts in ignorance of the existence of a principal can set up against the principal, who sues upon the contract, any defenses and equities which he could have set up against the agent, had the latter been in reality the principal suing on his own behalf." See numerous authorities cited in that case; also 3 C. J. S. 212, § 276 (2). But when is one dealing with a third person an "undisclosed principal"? In 3 C. J. S. 213, § 276 (2) this question is answered as follows: "In a suit by the principal, in order for the third person to avail himself of any equities, defenses, set-offs, or counter-claims he has against the agent only, he must be innocent of any knowledge of facts and circumstances which would put a reasonably prudent person on inquiry that he is dealing with an agent; and although the agent acts in his own name, if the third person knows or has reason to believe that he is dealing with one who is agent for another, he can not successfully set up such defense or set-off, as where he knows that the person he is dealing with is an agent although he does not know who the principal is. Accordingly a person purchasing from an agent who has neither the possession nor other indicia of property in himself is not entitled to set off a

debt due him from the agent, when sued by the undisclosed principal, since the absence of such apparent title is sufficient to put the purchaser upon inquiry as to the agent's true position in the transaction. If the character of one of the contracting parties is equivocal, that is, if he is known to be in the habit of contracting sometimes as principal and sometimes as agent, a purchaser buying from him with the view of covering his own debt to him and availing himself of a set-off is bound to inquire in what character he is acting in the particular transaction; and if the purchaser fails to make such inquiry, he can not avail himself of his set-off if it should appear that he has in fact contracted with an undisclosed principal." Substantially the same statement appears in 2 C. J. 878, § 562. See also 21 R. C. L. 901, § 77; Frazier v. Poindexter, 78 Ark. 241 (95 S. W. 464, 115 Am. St. R. 33, 8 Ann. Cas. 552) ; Bernhouse v. Abbott, 45 N. J. Law 531, (46 Am. R. 789) ; Baxter v. Sherman, 73 Minn. 434 (72 Am. St. R. 631) ; Miller v. Lea, 35 Md. 396, 406 (6 Am. D. 417). The rules laid down in the text above quoted are so well supported by authority that we deem it unnecessary to cite more cases in support of them.

It will be observed from the evidence that J. F. Posey himself gave practically all the evidence adduced at the trial of the case. In *Southern Bank of the State of Georgia* v. *Goetle*, 108 *Ga.* 796 (2) (33 S. E. 974), this statement appears: "A person testifying in his own behalf is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him. . . Yet, if by his evidence he establishes a cause of action, or a defense, as the case may be, and from no view of his testimony would a finding against him be warranted, the jury may, in the exercise of their right to judge of the credibility of witnesses, accept his evidence, notwithstanding much of the evidence introduced on the trial tends to impeach him and show his want of credibility." See also *Long Cigar & Grocery Co.* v. *Harvey*, 33 *Ga. App.* 236 (125 S. E. 870) ; *Lovett* v. *Gaskins*, 23 *Ga. App.* 623 (99 S. E. 156) ; *Hope* v. *First National Bank of Walsenburg*, 142 *Ga.* 310 (82 S. E. 921). The evidence in this case, set out in full above, speaks for itself, and we do not see that it would answer any good purpose to restate it in briefer form for the purpose of argument. Our view is that the defendant's own testimony shows that the plaintiff shipped

him the car of brick in question; that he knew this when the brick arrived; that if Childs owned a brick plant or any brick, the witness did not know anything about it, and did not think he did; and that he accepted the brick, resold them for his own use, and never paid plaintiff for them in cash or any other way. Again, it might be observed that when the plaintiff rendered a full statement of its account and demanded payment of it, the defendant merely replied: "This account has been paid to your salesman, Mr. Childs." Our view is that, as a matter of law, the facts and circumstances developed in this case were sufficient to put a reasonably prudent person on inquiry that he was dealing with Childs as an agent, and not individually. Certainly there was neither possession, nor other indicia of ownership of the brick, in Childs. In these circumstances the court erred in allowing C. W. Foy, attorney for the defendant, to testify, over appropriate objection, as follows: "On several occasions Mr. Childs [the agent who was dead] discussed the sale of the car of brick to Mr. Posey with me, and on each occasion told me the brick had been settled for." See *Turner* v. *Turner,* 123 *Ga.* 5 (3) (50 S. E. 969). This ruling covers both the special grounds of the amendment to the motion for new trial. We also hold that the court erred in overruling the general grounds.

Before concluding this opinion we wish to state that we have seen no Georgia decision which conflicts with the conclusion reached in this case. Upon a casual reading it might be concluded that *Bond* v. *McEntire,* 137 *Ga.* 438 (73 S. E. 652), militates against our finding in the instant case. However, the facts differentiate the two cases. A reading of the original record in the cited case discloses that there was evidence from which the jury had the right to conclude that the fertilizer was delivered to the defendant at different times, and that each time it was accompanied by "sales tickets," reading, "C. D. McEntire bought of D. A. Baker" certain quantities of guano; the point being that it appeared from the "sales tickets" that D. A. Baker was the seller himself, since the word "agent" did not appear after his name, and the tickets failed to indicate in any way that he was the agent of the plaintiff or any one else. It is also true that the two decisions on which *Bond* v. *McEntire* was based were in cases in which the agent was given the "indicia of property in himself." We refer

to *Ruan* v. *Gunn,* 77 *Ga.* 53; *Rosser* v. *Durden,* 82 *Ga.* 219 (7 S. E. 919, 14 Am. St. R. 152). These two decisions were based upon the principles governing cases where factors are involved, factors being entrusted with both the possession and the disposition of the property. See 3 C. J. S. 213, § 276 (2).

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*