## 60227. KLEMME CATTLE COMPANY, INC. v. WESTWIND CATTLE COMPANY.

McMURRAY, Presiding Judge.

The uncontroverted facts of this case are as follows: The president and incorporator of Westwind Cattle Company, a corporation, is Eleanor Jeane Ward, wife of Ronald Ward. Ronald Ward for some years had been involved in the business of buying and selling cattle. Apparently at one time he was operating as an independent businessman and registered with the Secretary of Agriculture, United States Department of Agriculture, as a dealer to buy and sell livestock under the authority of the Packers and Stockyards Act, 7 USCA, § 181, et seq. Prior to the events upon which this action is predicated Ward was suspended as such registrant and ceased to be an authorized registrant to independently conduct a business as a buyer and seller of livestock (involved in interstate commerce, 7 USCA, § 181, et seq.).

Thereafter, Ward continued in the business of buying and selling cattle although it is uncertain as to his status either as an agent, employee, or partner of various other registered cattle dealers with whom he was involved. During this period of time he was shipping cattle through A & R Cattle Company. Ward purchased (A & R Cattle Company being the licensee) and delivered to Klemme Cattle Company, Inc., a shipment of cattle, many of which had possibly been poisoned from soybeans and died (en route) prior to or shortly after delivery. It had been the custom of Klemme's prior dealing with Ward to adjust on subsequent transactions claims for losses or shrinkage. Consistent with this pattern, in late December, 1977, Klemme billed Ward for the cattle lost in the above shipment (A & R Cattle Company) as well as for some hay which had been shipped by Klemme to Ward in October, 1977. Upon a subsequent shipment of cattle (under Westwind Cattle Company's license) by Westwind to Klemme Cattle Company, it failed to honor a draft on its account for the full amount of the cattle shipped and, instead, deducted the amount which it claims was a setoff for lost cattle and

for the hay shipped to Ward from the amount of the balance.

Whereupon Westwind Cattle Company brought this action against Klemme Cattle Company, Inc., alleging that the defendant had fraudulently entered into a contractual obligation with plaintiff under which defendant purchased a number of cattle from plaintiff and after removing the cattle from this state withholding a portion of the payment therefor, claiming that it was a setoff for an amount owed (by Ronald Ward) on an earlier account when in fact plaintiff did not owe any money on an earlier account and defendant was well aware of that fact. Plaintiff sought actual damages of $6,915.41 and punitive damages of $25,000.

The plaintiff has assumed the stance that there had been deducted from the sum due it for a shipment of cattle a debt owed the defendant from A & R Cattle Company and such action was deliberate and fraudulent. However, the defendant, in denying the claim, contends that it in all cases was dealing with Ronald Ward and was not aware of his relationship with the various cattle companies such as A & R Cattle Company and Westwind Cattle Company until after these events occurred.

At the trial of the case the evidence was in conflict as to the degree of knowledge on the part of the defendant as to the existence and identity of the various cattle companies with which Ronald Ward was connected in shipping cattle and as to Ronald Ward's relationship with those cattle companies. Ronald Ward had severed his relationship with A & R Cattle Company in November, 1977, the same month in which the shipment in question was made. Thereafter, he was operating with Westwind Cattle Company, his wife's company, which was incorporated in December, 1977. The jury returned a verdict in favor of the plaintiff in the amount of $6,915.41, the amount of actual damages claimed, but declined to return a verdict of punitive damages. The judgment followed the verdict, and the defendant appeals. *Held:*

1. Defendant enumerated as error the refusal of the trial court to permit an amendment of the pre-trial order so as to allow the introduction of certain documentary evidence. The disallowance of the proffered oral amendment to the pre-trial order and the construction of the pre-trial order as preventing defendant from introducing documentary evidence not listed thereon resulted in defendant being unable to introduce into evidence the exhibits in question. These exhibits included a draft by plaintiff on defendant's Missouri bank account; a number of invoices reflecting shipments of cattle to defendant by various cattle brokers which had been associated with Ronald Ward; copies of documents from the United States Department of Agriculture reflecting actions taken by that

agency against Ronald Ward; and a copy of the broker's bond of plaintiff.

It is the spirit and purpose of the Civil Practice Act that cases be decided on their merits and that decisions based on other considerations be avoided when practicable. Code Ann. § 81A-116 (Ga. L. 1966, pp. 609, 628; 1967, pp. 226, 231; 1969, pp. 1104, 1106) should not be construed to preclude a party from introducing evidence relating to his case if less harsh sanctions are appropriate. At the same time broad discretion is reposed in the trial court whose decision will not be disturbed except in cases demonstrating a clear abuse of that discretion.

In *Ambler v. Archer,* 230 Ga. 281, 285-289 (1) (196 SE2d 858), relied upon by the defendant, a party was not allowed to present any evidence other than the testimony of the party on account of the failure of that party's counsel to attend a second pre-trial hearing and to cooperate in formulating a pre-trial order embodying a list of witnesses which he proposed to use. This sanction was held to be too harsh because it prevented the party in that case from making out their side of the controversy before a jury.

In the case sub judice the substance of the excluded documentary evidence had been established by oral testimony. The evidence which would be admitted, had the motion to amend the pre-trial order been granted, would have added little, if any, to defendant's case. We therefore conclude that the facts of the case sub judice are sufficiently distinguishable from those of *Ambler v. Archer,* 230 Ga. 281, 285-289 (1), supra, so as not to be controlled by that case. The imposition of the sanction imposed for the exclusion of the documentary evidence does not constitute a manifest injustice to the defendant in this case due to the redundant nature of the evidence in question. Therefore, we hold that the case sub judice falls within the range of the discretion of the trial court. We find no clear abuse of that discretion and therefore conclude that this enumeration of error is without merit. Compare *Allstate Insurance Co. v. Reynolds,* 138 Ga. App. 582 (6) (227 SE2d 77).

2. Defendant's second enumeration of error complains of the court's charging plaintiff's first written request which was predicated upon the regulations promulgated by the United States Department of Agriculture under the authority of the Packers and Stockyards Act, 7 USCA § 181, et seq. These regulations published in the Federal Register and codified at 9 CFR 201.1, et seq., are constructive notice to the parties in this action. See 44 USCA § 1507. Such regulations are judicially cognizable by the courts of this state. See *Sims v. Southern Bell Telephone & Telegraph Co.,* 111 Ga. App. 363, 364 (141 SE2d 788).

Although the parties are charged with constructive notice of these regulations they are not charged with constructive notice of actions taken under authority of these regulations by the Department of Agriculture such as the suspension of the registration of Ronald Ward as a cattle dealer. Defendant contends that it had no knowledge of Ronald Ward's disability to function as an independent cattle dealer until several months after these events and refers us to the testimony of Lem Klemme, its president, that he did not learn of this until the time of a subsequent interview with the Department of Agriculture officials.

Although Yvonne Klemme, wife of Lem Klemme, and secretary-treasurer and bookkeeper for defendant, testified that she knew that Ward could not sell the cattle in question directly to defendant and that he had to go through an agent such as A & R Cattle Company, her testimony did not disclose the basis of this knowledge or opinion so that knowledge of Ronald Ward's suspended status with the Department of Agriculture was not conclusively imputable to the defendant corporation. There was considerable evidence as to Lem Klemme's perception of Ward's status as an independent businessman and principal in these transactions. As the relevant regulations of the Department of Agriculture would have permitted Ward as an individual to register for the purpose of buying and selling cattle and as the defendant was not conclusively shown to have any knowledge of Ward's suspension and ineligibility for such registration, the trial court erred in charging the jury that defendant corporation was charged with notice or knowledge under the regulations that it was not actually purchasing from Ward but rather through a clearing agent. This misstatement of the law and facts as to defendant's knowledge was harmful error requiring a new trial.

However, the above noted error relates only to defendant's knowledge. The charge does correctly state that Ward was not authorized by the Department of Agriculture to buy and sell cattle in his own name and was required by the regulations to sell cattle through an authorized agency such as A & R Cattle Company. The regulations required the A & R Cattle Company through its bond to be financially responsible for the obligations arising from the sale of cattle through it. There is no error or misinterpretation of the applicable regulations in regard to this portion of the charge. See 9 CFR 201.1., et seq.

3. Defendant enumerates as error the refusal of the trial court to charge its third written request dealing with piercing of the corporate veil and the discarding of the corporate form where such corporate entity is used to defeat justice, perpetrate fraud or to evade statutory, contractual or tort responsibility. As there is no evidence of any abuse

of corporate form by plaintiff, this charge is not authorized, and the trial court correctly declined to submit it to the jury. See *Casey v. Carrollton Ford Co.,* 152 Ga. App. 105, 106 (1) (262 SE2d 255).

4. The rights of an undisclosed principal against a third party are subject to claims acquired in good faith against the agent. See in this regard *Standard Brick & Tile Co. v. Posey,* 56 Ga. App. 686 (1), 689-690 (193 SE 613); *Ruan v. Gunn,* 77 Ga. 53; *Rosser, Armistead & Co. v. Darden,* 82 Ga. 219 (7 SE 919); 3 AmJur2d, Agency, § 325.

Ward testified that during the period defendant was receiving cattle invoiced A & R Cattle Company, he was working under an arrangement with A & R Cattle Company through which he shared equally in the profits or losses of the transactions he handled. This testimony is sufficient to create an issue as to whether the arrangement between Ward and A & R Cattle Company was a partnership.

Defendant's request to charge on partnership was a correct statement of the law taken from *Dawson v. Blitch,* 11 Ga. App. 840 (76 SE 596). See also Code § 75-102. The trial court erred in refusing to charge the jury on this issue as a determination that Ward and A & R Cattle Company were partners, as to defendant, may have affected the existence and nature of the setoff which defendant sought to assert against Westwind Cattle Company.

5. Prior to trial, the plaintiff filed unverified answers to defendant's request to admit. The trial court entered an ex parte order granting permission to plaintiff to amend its answer to defendant's request to admit by filing a verification to said responses. Defendant filed its objection to plaintiff's motion and excepted to the trial court's order granting, without notice to defendant, plaintiff's motion and allowing the amendment to plaintiff's answer to defendant's request to admit. The trial court then attempted to remedy any error in its ex parte order by allowing defendant ten days within which to show how the amendment prejudiced the defendant within the meaning of Code Ann. § 81A-136 (b) (Ga. L. 1966, pp. 609, 648; 1967, pp. 226, 234, 235; 1972, pp. 510, 528). The record discloses no attempt by defendant to show prejudice resulting from the allowance of the plaintiff's amendment.

Defendant argues that the burden first rested upon plaintiff to show that such withdrawal of admissions would aid in the presentation of the merits. See in this regard *Cielock v. Munn,* 244 Ga. 810, 812 (262 SE2d 114). Assuming that the ex parte order entered in regard to the withdrawal of the admissions was procedurally deficient, we cannot ignore that, upon the trial of the case, the evidence presented by the plaintiff clearly shows that the withdrawal of the admissions aided in the presentation of the merits.

The manner in which the movant must establish that the withdrawal of the admissions would aid in the presentation of the merits is not clearly set forth in *Cielock v. Munn,* 244 Ga. 810, supra, and as Justice Hill states in his special concurrence, "[i]t could be argued that this requirement is satisfied simply by the filing of the motion itself, which shows movant's desire to raise an issue of fact to be tried." *Cielock v. Munn,* 244 Ga. 810, 813, supra. Justice Hill advocated that where "the burden of proof as to the subject matter of the request will be on the defaulting movant, then movant should be required to show that the proffered denial of the request can be proved by admissible evidence having a modicum of credibility, and that the denial is not offered solely for the purpose of delay." *Cielock v. Munn,* 244 Ga. 810, 813, supra.

Whatever might have been the burden placed on the movants by the majority in *Cielock v. Munn,* 244 Ga. 810, supra, it seems to be no greater than this standard suggested by Justice Hill. As the evidence presented by the plaintiff at trial meets this standard, we must look for harm to the defendant in the procedural deficiencies. Defendant has shown none, and the burden of showing harm as well as error resting upon the defendant we must conclude that the procedural deficiencies reflected in the ex parte order of the trial court are harmless. See *Layne v. Rosenfeld,* 122 Ga. App. 839, 840 (178 SE2d 920).

The second prong of the test set forth in *Cielock v. Munn,* 244 Ga. 810, supra, places the burden upon the party who obtained the admission to satisfy the trial court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. The defendant was afforded the opportunity to present evidence on this issue but failed to do so. Consequently we find no harmful error in the trial court's order granting permission to plaintiff to amend the answer to defendant's request to admit by filing a verification to said response.

*Judgment reversed. Banke, J., concurs. Smith, J., concurs in the judgment only.*

Argued July 1, 1980 — Decided November 7, 1980.

*W. Allan Myers,* for appellant.
*G. Hughel Harrison,* for appellee.