69323. MINNICK et al. v. LEE et al.
(329 SE2d 548)

CARLEY, Judge.

Appellants Minnick were the plaintiffs below in this suit based on their son's death. He was killed while riding as guest passenger in an MG automobile that struck the back of a parked Byrd tractor-trailer truck on Interstate 95. The evidence shows the Byrd truck, the driver of which was appellee Lee, had become disabled and remained by the roadside all night with another Byrd truck, driven by appellee Phillips, parked behind it. Lee's truck was, according to some expert evidence, parked three to eight inches off the highway. According to other expert testimony, however, it was parked partly on the highway. Phillips' truck was parked off the highway and surrounded by red warning flashers. The collision occurred about 6:30 a.m. Apparently both occupants of the car died instantly. Both truck drivers were asleep at the time. Thus, there were no eyewitnesses to testify how the collision occurred. Appellee Phillips was granted a directed verdict. The jury returned a verdict for the remaining appellees.

1. A pre-trial order was entered in the instant case on February 22, 1984, the day after the jury had been selected and the day before testimony began. That order provided that no witness would be called whose name and address had not previously been furnished to the other side. Later that same day, appellants discovered for the first time the existence of a potential expert witness in the area of collision reconstruction, Sergeant Crawford of the Georgia State Patrol. On February 23, 1984, before any witness had been called in the case, appellants informed the court that a potential expert witness had just been found who would probably be called as a rebuttal witness and possibly in their case-in-chief. Appellants offered to make Sergeant Crawford available to appellees and appellees' counsel actually talked

with the prospective witness on that day. However, the trial court ruled that appellants would not be allowed to call Sergeant Crawford as a witness in their case-in-chief. With regard to calling him as a rebuttal witness, the trial court stated: "Well, I think [he] would still be excluded . . . . I'll rule on it whenever . . . when and if he is called."

Thereafter, appellants did call Sergeant Crawford as a rebuttal witness. A proffer of his testimony was made outside the presence of the jury. That proffer demonstrated that Sergeant Crawford's testimony was relevant to a crucial issue in the case, to wit: the location of the disabled parked truck of appellee Lee. Although appellants' original expert had testified to this issue in the case-in-chief, appellees' expert had given substantial testimony as to his opinion that the Lee truck was on the untraveled portion of the highway at the time of the collision. The proffer of Sergeant Crawford's testimony demonstrated that, based upon his examination of the scene and his experience and expertise in accident reconstruction, it was his opinion that the Lee truck had been situated at least a foot to two feet inside the traffic lane. Thus, his testimony was diametrically opposed to the opinion evidence that had been given by appellees' expert.

After this proffer, the trial court found that "the testimony of the witness . . . is basically a summary of the testimony given by [another expert witness for appellants] and it is [cumulative] and it is not rebuttal in nature. And the court rules that his testimony will not be allowed in this case." Further, the court ruled: "Well, if you all had discovered this witness in a reasonable time in advance of the trial, then I would have allowed you to call him as a witness, but as it is, I will stick by the pre-trial order."

Appellants enumerate as error the trial court's refusal to allow them to call Sergeant Crawford as a witness. We will first address the correctness of the ruling disallowing the calling of the witness for purpose of rebuttal.

With regard to the trial court's characterization of the proffered testimony as not being "rebuttal in nature" because it was cumulative, the case law is clearly to the contrary. See *Walker v. Fields*, 28 Ga. 237 (1859). In dealing with the right of a party to introduce rebuttal evidence, the Supreme Court, relying upon *Bryan v. Walton*, 20 Ga. 480 (7) (1856) has held: " 'Plaintiff had made out a *prima facie* case; it had been assailed vigorously by the defendant, and the purpose of this proof was to fortify [plaintiff's position] thus attacked. It was, we apprehend, competent to do so. It is a matter of every-day practice in the courts.' " *Bray v. Latham*, 81 Ga. 640, 643 (8 SE 64) (1888).

The other reason assigned by the trial court for the rejection of the proffered rebuttal evidence was its adherence to the pre-trial or-

der. Based upon the existence of a pre-trial order similar to that in the instant case, *Allstate Ins. Co. v. Reynolds*, 138 Ga. App. 582 (227 SE2d 77) (1976) held there was not abuse in the trial court's discretion in excluding rebuttal testimony. However, the explanatory language of the opinion underlying the holding in *Reynolds* serves to show the distinctions between *Reynolds* and this case: "The rule should obviously be more leniently applied in the case of rebuttal witnesses, where last minute decisions on whether to offer impeaching or contradicting evidence are the rule rather than the exception. But the court does have *some* discretion in the matter. In this case we note two points. *The witnesses were employees of the defendant with whose knowledge of the facts it had shown prior familiarity.* And while the defense proper closed on one day, the witnesses were not offered until the next, *no effort was made to notify the plaintiff in advance* or to move for amendment of the pre-trial order. Since the evidence offered contradicted the plaintiff's testimony *only circumstantially*, if at all, we will not interfere with the trial judge's discretion." *Allstate Ins. Co. v. Reynolds*, supra, 587-588.

In the case at bar, unlike *Reynolds*, Sergeant Crawford was not a person "with whose knowledge of the facts [appellants] had shown prior familiarity" and the appellants notified the court of the need for presentation of the testimony of the witness as soon as his identity was known. As noted previously, the witness was made available to counsel for appellees, and counsel for appellees actually talked with him. More importantly, the testimony of Sergeant Crawford was, as noted above, most relevant to a crucial issue in the case. Since appellants had the burden of proof in the case, the use of a qualified expert, who would give rebuttal testimony diametrically opposed to that given by appellees' expert, was a very effective trial tactic which appellants' counsel would have been remiss in failing to invoke.

Under the circumstances in the instant case, to uphold the ruling of the trial court would be to elevate a pre-trial order to an almost unassailable position of conclusive sanctity even in the face of the statutory mandate that "[t]he object of all legal investigation is the discovery of truth . . . ." OCGA § 24-1-2. The language of OCGA § 9-11-16 (b) provides that the pre-trial order is to control "*unless modified at the trial to prevent manifest injustice.*" (Emphasis supplied.) There is nothing in this statutory mandate to indicate that a motion must be made by a party. The trial court controls the proceedings and it is its duty, with or without motion, "to prevent manifest injustice." In view of the chronology of events which existed in the instant case, we find the failure of the trial court to modify the pre-trial order so as to allow the witness to testify in rebuttal constituted an abuse of discretion requiring reversal and a new trial.

Since the case must be retried as the result of the erroneous re-

fusal to allow appellants to call Sergeant Crawford as a rebuttal witness, the issue of whether it was also reversible error to refuse to allow him to be called in their case-in-chief is moot.

2. Appellants assert that, over their objection a witness for appellees was erroneously allowed to give testimony based on speculation. Our review of the record demonstrates that appellants' characterization of the contested testimony as "speculation" appears to be well taken. "Admission of evidence of a speculative or conjectural nature over objection on that ground is error." *Bankers Health &c. Ins. Co. v. Fryhofer*, 114 Ga. App. 107 (2) (150 SE2d 365) (1966). However, since the instant case must be retried for the reason discussed in Division 1, we need not decide whether the admission of the speculative testimony was harmful error and, therefore, constitutes an independent ground for reversal. Should similar testimony be offered at retrial, an objection that it is speculative should be sustained.

3. Appellants contend the trial court erred in refusing to charge certain Interstate Commerce Commission (ICC) trucking regulations, which they assert would clearly establish negligence per se on the part of both truck drivers. However, the appellants failed to submit these requests to charge in accordance with the pre-trial order or local court rules. *Hubacher v. Volkswagen Central*, 164 Ga. App. 791 (298 SE2d 533) (1982); *Gwinnett Commercial Bank v. Flake*, 151 Ga. App. 578 (260 SE2d 523) (1979). Moreover, the ICC regulations were not properly proved and pled. *Davis v. Gen. Gas. Corp.*, 106 Ga. App. 317 (126 SE2d 820) (1962).

4. The grant of a directed verdict to the second truck driver, appellee Phillips, was proper, as there was no evidence of actionable negligence on his part. OCGA § 9-11-50 (a). In general, the evidence showed that the driver of the automobile took no evasive action, left no skid marks, and never struck the Phillips truck but crashed into the back of Lee's truck, which was disabled and could not be moved from where it was parked. There being no evidence of negligence on Phillips' part, a directed verdict was proper as to him.

*Judgment affirmed in part and reversed in part. Banke, C. J., McMurray, P. J., Pope and Benham, JJ., concur. Beasley, J., concurs specially. Deen, P. J., Birdsong, P. J., and Sognier, J., dissent.*

BEASLEY, Judge, concurring specially.

1. This case was filed in March 1982 nearly two years after the fatal collision, and was tried almost two years later after extensive discovery and communications between the parties and several pre-trial conferences with the court. During this laborious process, in May 1983, defendants served interrogatories asking for, among other things, the name, address, profession, and substance of testimony and opinion of each expert witness. The request called attention to the

continuing duty to supply information and expressly referred to the expert witness in this regard. Plaintiffs gave the requested information, naming a Dr. Craig Depken. Although the answer was not formally amended, plaintiffs apparently did inform defendants that they would instead call Dr. David Brown, a private expert who in fact testified.

Plaintiffs learned of Trooper Crawford the day before the trial was to begin, and they advised the court and defendants, as soon as court commenced the next morning, that they expected to call him and would therefore make him available that afternoon or over the weekend for defendants to depose or simply query.

At the last of several pretrial conferences, a week or so prior to trial, the court instructed plaintiffs' counsel to prepare a pretrial order. Although attempts at arriving at an agreed order were made by counsel, none was submitted to the court. So the court, sua sponte, issued a pretrial order on February 22, the day the jury was selected, and the same day, as it turned out, that plaintiffs discovered and interviewed Crawford. The short pretrial order provided in part that "no witnesses will be called by either side unless their names and addresses have previously been furnished to the other side." The order was served on plaintiffs' counsel the next morning, just before or when the proceedings resumed and just before the announcement about Crawford.

Local rules provided a consolidated pretrial order form, which calls for each party's list of witnesses and whether they will or may be present at trial. It also provides that "the foregoing need not include witnesses to be used only for impeachment." As stated, that particular type order never materialized.

The local rules further provide that the court shall issue an order after the pretrial conference reflecting its results and that the order controls the subsequent course of the action, but that the court may amend the order at any time on motion or on the court's initiative, for good and sufficient cause and to prevent manifest injustice. The local rules were not precisely followed, for they provide that no case (with an exception not relevant here) is to be placed on the trial calendar without a pretrial order.

Crawford had been brought to the attention of plaintiffs' counsel by their witness Durrence, the accident investigation officer. Crawford was a member of the Georgia State Patrol and was experienced in drawing conclusions about the cause of collisions based on the techniques of accident reconstruction. Durrence had discovered that Crawford was in town at the district attorney's office, and on the instruction of plaintiffs' counsel called Crawford to come to counsel's office, which he did. Finding his opinion to be contrary to that expected from defendants' expert witness, and more in line with their

own private expert witness', plaintiffs brought him to court to testify. Plaintiffs' counsel stated when asked by the court, that he knew of Crawford's being "in the accident reconstruction business" but had never talked to him about this case, presumably because they already had private expert opinion.

Crawford's testimony, being objected to by defendants both before and after they interviewed him, was disallowed by the court on the grounds that it was cumulative of Brown's testimony and that plaintiffs were bound by the pretrial order, mentioning that plaintiffs had two years to prepare their case and would not be permitted to call him in the case-in-chief.[1]

When counsel offered Crawford in rebuttal to impeach defendants' expert's opinion, the court heard Crawford's proposed testimony outside the presence of the jury. Defense counsel acknowledged that rebuttal witnesses did not have to be divulged, either in response to interrogatories or pursuant to the terms of the pretrial order entered in this case.

Crawford's testimony indicated that he was first called into the case the day before, and that reviewing all the evidence, he was of the opinion that the Lee rig was located one to two feet into the northbound lane when struck by the car.

Defendants argued that this was not rebuttal testimony but rather was cumulative of Brown's, and that counsel should have located an additional expert earlier if he wanted one, rather than bring him to defendants' surprise as the trial was to commence. The court refused to allow Crawford's testimony, on the grounds that it was cumulative and not rebuttal, but that Brown could be recalled to rebut what defendants' expert had said. Brown, however, had returned to Atlanta.

The court further stated that if the witness had been discovered "in a reasonable time in advance of trial," he would have allowed it but chose to abide by the terms of the pretrial order. The court had been persuaded that the testimony was not rebuttal, which would have made it not subject to the pretrial order's mandate.

In my opinion, the proffered testimony was proper rebuttal testimony, for it challenged the correctness of defendant's expert opinion on the location of the struck rig, which fact was crucial to the determination of the ultimate issue, i.e., the cause of the collision. The Lee rig's placement when struck was one of the most hotly controverted facts in the case, if not the most controversial. Disinterested, objective testimony was obviously important, as the only other parties who

---

[1] Counsel for defendants volunteered, however, that "[counsel for plaintiffs] has worked this case diligently and hard."

could testify where the rig was were the two defendant drivers. Plaintiffs, who had the burden of proof, sought to counter the opinion of defendants' expert by producing a third expert so that the evidence would not just be one expert's opinion versus another expert's opinion, a situation which might too easily be viewed as leaving the scales in balance. It is common, for example, to attach greater significance to medical opinion regarding the need for certain treatment when a "second opinion" corroborates it, especially in the face of a contrary opinion. Second, and indeed third, opinions are an inherent aspect of appellate judicial decision-making, partially for the very same reason, to give added weight to their correctness by demonstrating that three impartial minds have reached the same conclusion. Thus to say that one expert's opinion should not be permitted because it is "cumulative" of another expert's opinion misses the value of the factor of corroboration, especially where the opponent's expert has testified otherwise. To simply call Brown back in rebuttal to say Elliott was wrong would be circuitous, as Brown's position had already been given to the jury.

Plaintiffs were entitled to "the last word" by way of rebuttal, since they had the burden of proof. The calling of a *different* expert witness in rebuttal should not have been prohibited by the pretrial order of which counsel was unaware when he procured the new witness.

2. The investigating trooper's testimony regarding his opinion that the driver had fallen asleep or had suffered the hypnotic night driving syndrome was purely speculative, as he in fact admitted. He was not even very familiar with the latter phenomenon. As he stated, that this was the cause was his own idea and he had no evidence to support it, and either one of these theories, as well as others, was "possible." He expressed a great deal of equivocation and finally said, "I don't have no way of knowing. Like I said, I don't have any evidence to say one way or another because I don't know what he was doing."

Such testimony is of no probative value because of insufficient foundation, and yet it directly addressed the ultimate issue in the case, i.e., what was the cause of the collision. The jury should not have been permitted to base a finding that the collision was caused by the driver's falling asleep or succumbing to a mind-affecting "syndrome," on this testimony of speculation and surmise.

BIRDSONG, Presiding Judge, dissenting.

I disagree with the majority's ruling that the trial court erred in its refusal to let an expert witness, Crawford, testify in appellant's case-in-chief or in rebuttal. Crawford was not listed as a prospective witness in the pre-trial order. The pre-trial order was entered Novem-

ber 22, the day after the jury was chosen and the day before testimony began. The pre-trial order provided that no witness would be called whose name and address had not been previously furnished to the other side. It was within the trial court's discretion to disallow the witness, particularly since the pre-trial order required it. See *Allstate Ins. Co. v. Reynolds*, 138 Ga. App. 582 (227 SE2d 77); *Sackett v. L. L. Minor Co.*, 244 Ga. 375 (260 SE2d 37). It is not reversible error to disallow a witness for rebuttal purposes where the proffered testimony of the witness would have been cumulative, as in this case. *Klemme Cattle Co. v. Westwind Cattle Co.*, 156 Ga. App. 353, 355 (274 SE2d 738). See esp. OCGA § 9-11-16 where it is provided that a pre-trial order controls the subsequent course of the trial, "unless modified at the trial to prevent manifest injustice." *Klemme Cattle Co.*, supra. Where evidence is cumulative, there is generally no such "manifest injustice" that would permit us to disturb the trial court's discretion. *Klemme Cattle Co.*, supra. No motion was made to modify the pre-trial order in this case, and I do not think the trial court abused its discretion in abiding by it. See *Gilbert v. Meason*, 145 Ga. App. 662, 663 (244 SE2d 601), quoting *Dumas v. Beasley*, 218 Ga. 349, 352 (128 SE2d 59) where the Supreme Court held: "While the trial judge might, under the particular facts of some case, modify the pretrial order without request to prevent manifest injustice, it is difficult to imagine any case where it could be held that the trial judge abused his discretion in failing to modify a pretrial order where there had been no motion for such modification before or during the trial."

I therefore respectfully dissent from the majority's ruling in Division 1. I am authorized to state that Presiding Judge Deen and Judge Sognier join in this dissent.

DECIDED MARCH 12, 1985 —
REHEARING DENIED MARCH 27, 1985 — 

*J. Noel Osteen, Edward J. Bauer*, for appellants.
*Thomas J. Mahoney, Jr.*, for appellees.